McGillivray v. Joint School District, 112 Wis. 354.

report of sale. The payment of all of the foregoing sums should be made a condition of vacating the judgment.

*By the Court.*— Both orders appealed from are reversed, and the cause is remanded with directions to deny plaintiffs' motion for confirmation of the sheriff's sale, and to grant motion of defendant *Emma Maud Smith* for vacation of the judgment and leave to answer, upon performance of the conditions indicated within a reasonable time, to be fixed by the circuit court.

A motion by the respondents for a rehearing was denied December 17, 1901; and on that day the mandate of this court was amended by inserting the words "as to her" after the word "judgment."

McGILLIVRAY, Appellant, vs. JOINT SCHOOL DISTRICT No. 1 OF THE TOWNS OF MELROSE AND IRVING, Respondent.

*November 9 — December 17, 1901.*

*School district: Contracts for school-house: Limitation on indebtedness:* Quantum meruit: *Validity up to limit: Ratification.*

1. If an express contract for the purchase of material for a school-house was void because it increased the indebtedness of the school district beyond the constitutional limit, the fact that the district has had the benefit of such material does not render it liable on an implied contract to pay therefor *quantum meruit.*

2. Where, in such a case, the other party has in good faith fully performed the contract on his part, and the material has been wrought into the building so that it cannot be returned to him, the contract may be held binding upon the district up to the amount of the constitutional limit of indebtedness, and void only as to the excess. It is immaterial, in such case, that the duty of the contractor was not in its nature severable.

3. Contracts for the building of a school-house made in violation of sec. 434, Stats. 1898 (limiting the board in building school-houses to

" funds provided for that purpose "), are ratified and validated, so far as they do not exceed the constitutional limit of indebtedness, by a vote of the school-district meeting, with full notice of the facts, to borrow and raise by taxation funds for the erection of the school-house sufficient to cover the obligations incurred.

APPEAL from a judgment of the circuit court for Jackson county: JAMES O'NEILL, Circuit Judge. . *Reversed.* .

An action for $850 worth of material and mill work sold and furnished by the plaintiff under a written contract made February 19, 1900, and incorporated in the construction of a new school-house situated upon land belonging to the district, and now occupied and used by it for school-house purposes. The contract was simply to " furnish all the mill-work for your school-house, according to plans and specifications, for the sum of $850.00." The defense was invalidity of the contract.

It appeared, and was found by the court, that the defendant district, in 1899 and 1900, contained a population of 376 and had an assessed valuation of real and personal property of $71,564; that, at the annual school meeting in July, 1899, it was declared as the sense of the voters that proper steps be at once taken for the erection of a suitable school-house for the district. A building committee was appointed, including the school board, and was directed to " get plans for a school-house within four thousand dollars ($4,000)." On August 8, 1899, at a special meeting, a loan for $2,580 from the state trust funds was authorized, which was negotiated, and the money received in December, 1899. At the time of the contract with the plaintiff, no other steps had been taken by the school district, either to authorize the building or to provide money. At that time there had been incurred indebtedness in the course of building the school-house, aggregating $2,983.76, a sum in excess of the moneys borrowed from the trust funds. In July, 1900, it was resolved that the board be instructed to negotiate a loan of

$1,000. Also, it was resolved that the sum of $1,600 be levied against the taxable property of the school district for that year, to be used for building purposes. In a subsequent suit by taxpayers, that levy has been adjudged void *in toto*, and its collection enjoined, on the ground that there never was any certification by the town board that a larger sum than $1,000 needed to be raised. The court found that the plaintiff was not shown to have had any actual knowledge as to the condition of these funds or the amount contracted against them.

The court held, as conclusion of law, that the power of the building committee to bind the defendant had been exhausted at the time of the contract with the plaintiff, for the reason that the constitutional limit had already been passed, and that there were then no funds provided by the district for said building. Accordingly judgment was entered in favor of the defendant, from which the plaintiff appeals.

For the appellant there was a brief by *Pope & Pope*, and oral argument by *Carl C. Pope*.

*G. M. Perry*, for the respondent.

DODGE, J. The validity of plaintiff's contract is assailed on the ground, among others, that it carried the indebtedness beyond the constitutional limit of five per cent. of the assessed valuation, and was therefore beyond the power of the district itself. That such was the fact is beyond dispute. Five per cent. of the assessed value was $3,578.20; the existing indebtedness on February 19, 1900, was $2,983.76; the constitutional limit of indebtedness was therefore $594.44,— less than $850. The contract was therefore forbidden by sec. 3, art. XI, of the constitution. Appellant, however, contends that, even though the express contract to pay for the "mill-work" furnished and performed by him be void, yet, as he has alleged and proved that the district

has had the benefit, it must be held liable as upon an implied contract. Obviously, if that position is to be sustained in all such cases, the constitutional prohibition that "no . . . school district . . . shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein" is ineffectual to protect the inhabitants and taxpayers against the unlawful acts of their agents, either the electors in school district assembled, or the school board, or even the individual officers. If, whenever those agents are able to cause lumber to be wrought into a school-house, or work to be done thereon, the district must be held to pay therefor, however unlawful or forbidden, the result prohibited by the constitution is accomplished, for the district becomes indebted. Nevertheless, the doctrine is not without support from remarks made in opinions of courts and from text-writers, though it is believed that all well-considered decisions stop short of holding that a municipal corporation may be held liable on implied contract to pay *quantum meruit* for property which it had no power or was forbidden to purchase. We by no means question the rule that a municipal corporation may be held on principles of equity to return that which it has obtained and holds by means of a contract which it had no authority to make, whether the thing obtained be money or property. That rule has recently been enforced in the thoroughly considered case of *Thomson v. Elton*, 109 Wis. 589, where the other Wisconsin decisions supporting it are cited, together with some from other jurisdictions, to which might be added the very illustrative case of *Chapman v. Douglas Co.* 107 U. S. 348. There the corporation, having power to purchase land for a court-house, did so by a contract void because the manner of payment was forbidden. The court rendered judgment requiring, in the alternative, reconveyance of the property or

payment of the purchase price.    Another illustrative case is
*Stebbins v. Perry Co.* 167 Ill. 567, where, after railroad-aid
bonds had been found unauthorized and void, and all re-
covery thereon denied, the right of the plaintiff was sus-
tained to reclaim the capital stock held by the county as
consideration therefor.

These cases all proceed upon the theory of rescinding a
void contract and undoing the acts done in reliance thereon,
so as to place the parties in the original *status quo*.    None
of them holds that a municipal corporation can become liable
for a debt by implied contract in defiance of a direct statu-
tory or constitutional prohibition against its becoming liable
at all.    Indeed, such prohibition is expressly mentioned in
*Thomson v. Elton* as an insuperable obstacle to recovery.
Other cases marking the distinction and enforcing such a pro-
hibition might be cited almost without limit.    A few will suf-
fice: *Richardson v. Grant Co.* 27 Fed. Rep. 495; *Gamewell F.
A. T. Co. v. Laporte,* 102 Fed. Rep. 417, 419; *Litchfield v. Bal-
lou,* 114 U. S. 190; *Mosher v. Independent Sch. Dist.* 44 Iowa,
122, 126; *Capital Bank v. School Dist. No. 53,* 1 N. Dak. 479;
*McDonald v. New York,* 68 N. Y. 23; *Fox v. New Orleans,*
12 La. Ann. 154; *Joint School Dist. v. Reid,* 82 Wis. 96;
*Earles v. Wells,* 94 Wis. 285.

In the instant case we find the direct and positive prohi-
bition against incurring the liability for the property and
labor furnished by appellant, and that prohibition cannot be
evaded by the legerdemain of substituting the fiction of an
implied contract on which the prohibited liability may rest
instead of the void express contract.    He who deals with the
officers of public corporations must take notice of the limits
placed by law upon the powers of those agents of the tax-
payers.    If he becomes party, however innocently, to an at-
tempt to impose on the latter forbidden burdens he must
expect to fail.

A much graver question, hardly suggested and not at all

argued in appellant's brief, forces itself upon our consideration. That is whether the district, having the power to incur liability to the extent of $594.44, may not be held to have done so by a promise to pay a larger amount, when, as here, the contract of the other party has been fully executed, and the district has obtained something that it had authority to purchase. That exact question is new in Wisconsin and not controlled by direct authority, though the principles on which it may be resolved are pretty well established.

No rule is better settled than that, in the revision of governmental acts claimed to exceed the limits imposed upon such governing bodies by the fundamental laws under which they exist, the courts will uniformly strive to give effect to such acts so far as is possible without disobeying the restrictions so imposed, and will hold acts valid up to such limits, notwithstanding some excess beyond constitutional restrictions, if the latter can be separated and can be denied efficacy without defeating the clear and obvious purpose of the whole act. *McCullough v. Virginia*, 172 U. S. 102; *Detroit v. Detroit City R. Co.* 60 Fed. Rep. 161; *Illinois T. & S. Bank v. Arkansas City*, 76 Fed. Rep. 271; *Kimball v. Cedar Rapids*, 100 Fed. Rep. 802; *Lewis v. Clarendon*, 5 Dill. 329; *Johnson v. Stark Co.* 24 Ill. 75; *Quincy v. Warfield*, 25 Ill. 317; *Briscoe v. Allison*, 43 Ill. 291; *State v. Allen*, 43 Ill. 456; *Scofield v. Council Bluffs*, 68 Iowa, 695; *Thompson v. Independent Sch. Dist.* 102 Iowa, 94; *Lynch v. The Steamer Economy*, 27 Wis. 69; *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614; *Monroe W. W. Co. v. Monroe*, 110 Wis. 11, 18; *State ex rel. Hicks v. Stevens, ante,* p. 170; *Allen v. LaFayette*, 89 Ala. 641. Among these will be found cases holding that an act of the legislature providing that certain coupons shall be receivable for all state taxes is valid as to all taxes except such as the constitution required shall be paid in money; that tax levies including illegal amounts may be valid for

legal parts and abated by striking out the illegal; that ordinances granting exclusive franchises in streets are valid as franchises, though invalid as to the exclusiveness; that bonds bearing a higher rate of interest than permitted by the law authorizing them may be enforced at the highest rate of interest permitted by the law, and held invalid merely as to the excess; and that contracts invalid as to method of payment may be held valid to require payment in such manner as the corporation might legally have promised. Under this general rule it has been held that acts of municipal or public corporations in incurring indebtedness, or in issuing bonds in excess of a limit prescribed by the constitution or by law, might be given effect up to the limit so prescribed, in a multitude of cases, presenting various phases and illustrations. *McPherson v. Foster Bros.* 43 Iowa, 48; *Stockdale v. School Dist. No. 2,* 47 Mich. 226; *Culbertson v. Fulton,* 127 Ill. 30; *Chicago v. McDonald,* 176 Ill. 404; *Henry A. Keith & Co. v. Du Quoin ex rel. Parks,* 89 Ill. App. 36; *May v. Gloucester,* 174 Mass. 583; *School Town of Winamac v. Hess,* 151 Ind. 229; *Citizens Bank v. Terrell,* 78 Tex. 450, 460; *Daviess Co. v. Dickinson,* 117 U. S. 657; *Francis v. Howard Co.* 50 Fed. Rep. 44; *Ætna L. Ins. Co. v. Lyon Co.* 82 Fed. Rep. 929, 934; *Crogster v. Bayfield Co.* 99 Wis. 1; *Herman v. Oconto,* 110 Wis. 660.

In *McPherson v. Foster Bros.* 43 Iowa, 48, which is now certainly entitled to be considered a leading case, two propositions were decided. A contract of $15,000 having been made when the constitutional limit of indebtedness which might be incurred was $2,057.50, and that contract having been executed by the contractor, it was held that the promise of the school district to pay was valid and enforceable up to the constitutional limit, but invalid as to the excess. In that case, bonds of the district for the full $15,000 had been issued and were in circulation, and it was further held that $2,057.50 of the $15,000 bonds was valid, and that the

· court could protect the equities by scaling down each bond *pro rata.*

In *Stockdale v. School Dist. No. 2,* 47 Mich. 226, the opinion being by COOLEY, J., the first proposition of the Iowa case was fully concurred in.   There a contract to build a schoolhouse having been fully performed, to the loss of the contractor, the district voted to pay him in settlement $730, and issue bonds therefor, when the constitutional debt limit was but $300.   The action was to enjoin the issue of bonds. The court held the promise to pay $730 valid to the extent of $300, and void as to the excess, and enjoined the issue of bonds in excess of $300.

In *Culbertson v. Fulton,* 127 Ill. 30, was a fully executed contract to build waterworks for $11,619, made at a time when the constitutional limit permitted indebtedness of only $10,453.   The court held the promise of the city binding to the extent of the $10,453, its debt limit, and enjoined further payment and the collection of so much of a tax levied therefor.

*Chicago v. McDonald,* 176 Ill. 404, has no resemblance in its facts, but both principles laid down in the Iowa case were expressly approved, and in that case it was declared, *obiter,* that even an executory contract, if divisible, would be restrained only for its excess above the constitutional debt limit; a doctrine not necessary to be considered in the instant case.

*Henry A. Keith & Co. v. Du Quoin ex rel. Parks,* 89 Ill. App. 36, dealt with a contract executed by the contractor to build waterworks at a gross price of $13,486, made when the city's debt limit permitted only $3,500.   Held, that the city's promise to pay was valid up to that limit, though void and unenforceable as to the balance.

*May v. Gloucester,* 174 Mass. 583, presented a contract indefinite in time, to pay $3 per day for hire of horses, under which some $400 had been earned.   The officers making the con-

tract were limited by law to contracts not exceeding $100. Their contract to pay was held valid and binding upon the city to the extent of the $100, and invalid as to the balance.

In *School Town of Winamac v. Hess*, 151 Ind. 229, an entire contract for the building of a school-house for $16,896.60 was made, when the debt limit was $8,000. The court held the contract valid and binding on both parties, though executed only in part, and decided that the contractor was liable in damages for failure to complete, and that the town was liable upon its promise to pay up to the amount it could legally promise, to wit, $8,000. This decision was made in an action at law, and was accompanied by an intimation that a court in equity might relieve the contractor by the method of rescission for mistake.

In *Citizens Bank v. Terrell*, 78 Tex. 450, as to issue of bonds for waterworks in excess of constitutional limit, the court held that an amount up to that limit represented valid indebtedness; that, if evidence showed the bonds to have been issued at different times, the earlier issues should be enforced, each for its full face, but, if issued all at once, each bond should be valid for a proportionate part of the whole permitted debt.

In *Daviess Co. v. Dickinson*, 117 U. S. 657, bonds were issued and put in circulation to the amount of $320,000, when only $250,000 were within the power of the county officers. The court held that the county should be liable to the amount authorized, namely, $250,000, but not liable for the balance, and remitted the case to take evidence as to how severance should be made, indicating that if the bonds were not issued all at once, those first issued would be valid up to the amount specified.

In *Francis v. Howard Co.* 50 Fed. Rep. 44, bonds were issued all at once to the amount of $35,000, in face of a constitutional limit of $13,982.77. The court applied the rule of *McPherson v. Foster Bros.*, holding the county liable for the

permitted amount and not liable for the balance, and scaled down each bond and coupon *pro rata.*

In *Ætna L. Ins. Co. v. Lyon Co.* 82 Fed. Rep. 929, the plaintiff was the original payee and holder at the time of suit of an entire issue of $120,000 of refunding bonds issued at a time when the constitutional debt limit had already been reached. The court held it competent for the county to issue new bonds to pay old debts, as the indebtedness was not thereby increased, but that the new bonds would not be valid except so far as the proceeds of them had been actually applied to the old indebtedness, and would be valid to that extent. The cause was remanded for evidence as to what part of the $120,000 had been so used, with directions to cancel all excess of bonds above that amount.

*Crogster v. Bayfield Co.* 99 Wis. 1, was a suit in equity to cancel the entire issue of $240,000 of railroad-aid bonds, the county debt limit being approximately $225,000. It appeared that under the contract each section of the road was to be compensated by a specified quantity of bonds, the last section to justify issue of $25,000. The court held that, so far as the contract was severable, it was binding, and that all of the bonds except the last $25,000 should be held valid and binding obligations. Those, although they only exceeded the debt limit by $15,000, were held all invalid, for the reason that the contract which they were to compensate, namely, the single section of the road, was entire, and the bonds were all issued at once, so that none of them could have priority over others. The court, while enforcing the general principle of liability up to the limit of power upon acts exceeding it, repudiated the doctrine of *McPherson v. Foster Bros.* and other cases following it, that a total and simultaneous issue of bonds could, with practical safety, be scaled down to some other figure, therein resting upon the authority of *Hedges v. Dixon Co.* 150 U. S. 182. While the reasons for this repudiation were not very fully set forth, of

course many such suggest themselves; prominent among which is the inability to ascertain and bring before the court all of the parties having rights in such bonds, or to prevent others from acquiring rights, so that the priorities and equities between them can be controlled,— a very practical objection to the course which was taken by the Iowa court where owners might have so dealt that as among themselves some ought to be paid in full before others received any payment.

The last case on the subject is *Herman v. Oconto*, 110 Wis. 660, where this court held that a promise to pay by a city upon a sewer contract exceeding the debt limit, would be held valid up to that limit, provided the duty of the contractor was of such character as to be capable of severance. It was not necessary in that case to discuss, and the court did not discuss, whether the same holding might not have been made if the contractor's obligation had been entire.

Thus we find that the principle of liability of municipal corporations with limited powers up to the limit of those powers, even upon an act or contract some part of which is in excess thereof, is well supported by authority from a multitude of courts, and impliedly at least by this court. The only difficulty which courts have at any time deemed at all serious was whether a severance could be made at the dividing line between that which was legal and that which was forbidden, and there is grave discussion in several of the cases whether the duty assumed by the contractor was capable of severance. But is this necessary or at all material to the equitable purpose which has induced the adoption of the general principle above stated? It seems to us not, in cases like this, where the contractor has fully performed his entire contract, regardless of whether there was a line of severance in the course thereof, and where the only obligation of the municipality is the mere payment of money. Such an obligation is in its nature severable, as one dollar is severable

from another. As that is the only obligation questioned or sought to be enforced, why is not its severability sufficient without inquiring whether the contractor's duty was also capable of division? After the latter's duty has been fully performed, and he finds he can receive but a part of the agreed price, it matters not at all to him or any one else to what part of his services the money paid shall be ascribed. It is in practical effect a payment of a less price for the entire work. If a school district has power to purchase and pay for a school-house costing $10,000, and obtains one worth $12,000, and for which it promised to pay $12,000, although upon indivisible contract, there is no constitutional prohibition breached except by promising to pay the excessive $2,000. It is too late, after the completion of the building, for the contractor to rescind, and no other form of remedy is open to him except to receive what the municipality can pay. It would certainly seem the part of equity rather that the school district should pay the $10,000 which it had a right to promise to pay for a school-house than that the contractor should suffer the entire loss of his services,— a result to be avoided if possible without disobedience of the constitutional restriction. Obviously, if he had offered to build the identical school-house for the $10,000, and the city had promised to pay it, no criticism could have been made of the transaction. It seems absurd to say that the city cannot pay the permitted $10,000 because, forsooth, the school-house was better and more valuable than it could ordinarily purchase for that price. In the case before us, if the plaintiff had offered to supply the mill-work according to the specifications for $594.44, and the district had legally promised to pay him that sum therefor, the transaction would have been within its competency, and would have infringed neither word nor spirit of the constitution; and yet that is the result of now holding the district liable for that sum. They have purchased that which they had the right and the power to pur-

chase in their discretion. They have not infringed the con-
stitution, because they have not imposed liability in excess
of the five per cent. limit prescribed by the constitution. In
this connection it should be noted that the constitutional
provision is not against making contracts nor against pur-
chasing material or labor, but against incurring indebted-
ness, and, if we hold a promise to pay a larger sum valid
only up to the debt limit, the result is that such promise
does not incur indebtedness beyond that amount. *Joint
School Dist. v. Reid*, 82 Wis. 96. We are convinced that no
principle of law nor rule of statutory construction stands in
the way of doing this measure of justice to a contractor who
innocently and in good faith supplies a municipal corpora-
tion with the things it has the right to purchase. The de-
fendant had power to promise to pay $594.44. If it has
promised in legal form to pay a larger sum, and has received
the full consideration therefor, which it cannot now return,
it should be held to its promise up to the lesser sum.

But it is argued by the respondent that, even conceding
the power of the superior agent of the school district,
namely, the meeting of the electors, to make a valid con-
tract, yet no such contract had been made, because the
subagency, the school board, with whom plaintiff's trans-
action was had, did not have authority to make it, for the
reason that the board is by sec. 434, Stats. 1898, limited, in
building school-houses, to "funds provided for that pur-
pose," and that, at the time of making the contract, the
only funds provided were the $2,580 borrowed from the
state, which had been more than exhausted. This objection
would seem to be insuperable to the original validity of the
contract made by the school board to pay either the sum of
$850 or the sum of $594.44. *Capital Bank v. School Dist.
No. 53*, 1 N. Dak. 479; *Nevil v. Clifford*, 63 Wis. 435, 443.
It is, however, too thoroughly settled to need more than
statement that what the district meeting could in advance

authorize it can subsequently ratify. *Mills v. Gleason*, 11 Wis. 470; *Kane v. School Dist.* 52 Wis. 502; *Nevil v. Clifford, supra; Koch v. Milwaukee*, 89 Wis. 220, 228. Of course, this power of ratification is subject to exactly the same limitations as the power to authorize in advance; but within those limitations it is complete. We are unable to avoid the conviction that the record in this case discloses such ratification of the contract made with the plaintiff; for, five months after it was made and with presumptively full notice thereof, and having in view their original resolution for a $4,000 school-house, the district meeting in July did all in its power to provide funds therefor by authorizing the board to borrow, for the erection of said school-house, the further sum of $1,000, and by voting to levy a tax of $1,600 therefor. True, the latter vote has been held illegal and void. Whether that holding in a suit to which the plaintiff was not a party is of force, we need not decide, for the other vote, authorizing the borrowing of money, is certainly sufficient, under the circumstances, to ratify this contract and the incurring of the obligation to pay to the plaintiff $594.44, which, with all prior obligations, would be covered by the additional funds thus to be provided. Of course neither of these votes can validate the contract beyond this amount, for, at the time it was made, that was the limit which the district meeting could have authorized.

Upon the whole case, therefore, we conclude that plaintiff was entitled to recover judgment for the last-mentioned sum, and that the judgment rendered was erroneous. Nothing appears in the record to justify recovery of interest prior to commencement of the action.

*By the Court.*— Judgment reversed, and cause remanded with directions to render judgment for the plaintiff for five hundred ninety-four dollars and forty-four cents ($594.44), with interest from November 22, 1900.