**FERGUSON  v.  UNION  NAT.  BANK  OF CLARKSBURG,  W. VA.**

No. 4892.

Circuit Court of Appeals, Fourth Circuit.

March 11, 1942.

Howard Caplan, Asst. U. S. Atty., of Clarksburg, W. Va. (Joe V. Gibson, U. S. Atty., of Kingwood, W. Va., and C. Brooks Deveny, Asst. U. S. Atty., of Fairmont, W. Va., on the brief), for appellant.

James M. Guiher, of Clarksburg, W. Va. (William P. Nottingham and Steptoe & Johnson, all of Clarksburg, W. Va., on the brief) for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff, the Union National Bank of Clarksburg, W. Va., in a suit against the Federal Housing Administrator on a contract insuring a loan made to an industrial corporation pursuant to Title I section 2 of the National Housing Act, approved June 27, 1934, 48 Stat. 1246, as amended by the Acts of May 28, 1935, 49 Stat. 299, and August 23, 1935, 49 Stat. 722, 12 U.S.C.A. § 1703. The loan was for $50,000, but plaintiff asked recovery for only $33,117.93 and interest, being 20% of the total of its insured loans after deducting certain items to which reference will be made hereafter. The case was heard before a jury and from verdict in favor of the plaintiff for the full amount of its demand with interest the defendant has appealed. Error is assigned with respect to the action of the court below in taking jurisdiction of the cause, in refusing to direct verdict for defendant, in admitting testimony as to the action taken by the defendant on plaintiff's claim, in refusing certain prayers for instruction, and in allowing interest on the claim.

The controversy between the parties relates chiefly to the eligibility for insurance under the act of Congress and the regulations issued thereunder of the loan sued on and a loan made by plaintiff to the Old

Tavern Brewing Company. Sustaining defendant's contention with respect to the eligibility of the former of these would entirely defeat plaintiff's right of recovery; sustaining it with respect to the eligibility of the latter would result merely in a reduction of the total of the insured loans with consequent reduction of the amount of the recovery to which plaintiff is entitled. The contention most seriously pressed is that the court should have directed a verdict for defendant on the ground that the loan sued on was not eligible for insurance.

The facts with respect to the loan sued on are that it was for $50,000 and was made by plaintiff to the Pederson Glass Company of Lumberport, W. Va., on January 10, 1936. That company had been engaged in manufacturing glass cylinders for gasoline filling station pumps, but had suspended the manufacturing of these articles about a year prior to the granting of the loan as a result of the virtual abandonment of the type of pump in which they were used. The glass company sought a loan under the housing act as amended for the purpose of installing in its plant a glass furnace with a view of manufacturing flat glass under a new and patented process which was thought to have much promise of success. The company approached plaintiff for the purpose of obtaining a loan under the amended act and represented that it thought that a loan of $30,000 would be sufficient in view of credits which it expected to obtain from furnishers of materials. The evidence is clear, however, that, as a result of conferences between the bank and the president of the glass company, it was decided that a loan of $50,000 would be necessary, that the loan was made in good faith for that amount and that not less than that amount was actully expended by the glass company in the construction of the furnace.

The company furnished to the bank a credit statement as the basis of the loan, including its last balance sheet, but furnished no profit and loss statement for the reason that it had virtually been out of business for more than a year. There is a conflict of evidence as to whether the statement furnished justified the loan, but the evidence introduced by plaintiff amply sustains the view that the loan was justified. Plaintiff, at the request of defendant, furnished a copy of the credit statement, which showed the absence of any profit and loss statement, and defendant raised no objection to the loan at that time but continued to list it as insured. Two guaranties, to the extent of $4,250 each, were given plaintiff as additional security for the loan, one signed by Solomon & Son, Inc., and the other by the Simplex Engineering Company.

At the time of the making of the loan, $22,500 was placed in the glass company's checking account and $27,500 in its reserve account. This reserve account, with the exception hereafter to be noted, was applied to the satisfaction of notes given for temporary loans, made as the work on the furnace progressed, to supply the glass company with funds for that purpose. This exception was that installment payments of principal and interest on the loan amounting to $7,707.25 were charged by the plaintiff against the reserve account. This was the only part of the $50,000 loan not used in the construction of the furnace except that the glass company drew a check to the bank in the sum of $1,500 against its checking account provided by the loan, to supply funds to be used to pay coupons falling due on a bond issue.

The items above mentioned, together with an item of $16,375 included in a loan to the Old Tavern Brewing Company, were eliminated by the defendant from the amount of plaintiff's insured loans in computing the amount of insurance to which plaintiff was entitled· under the provision limiting the insurance to 20% of the total of the insured loans; and the amount for which plaintiff has sued as a result of this elimination of items $33,117.93, is less by a considerable amount than what remains of the $50,000 loan after the deduction therefrom of the $7,707.25 and the $1,500 items. Some of the installments of the loan were not due at the time suit was instituted, but the amount due at that time exceeded the amount for which suit was brought.

We think there can be no question but that the court had jurisdiction of the cause. It is specifically provided that the Administrator in his official capacity may "sue and be sued in any court of competent jurisdiction, State or Federal". 49 Stat. 722, 12 U.S.C.A. § 1702. It could hardly have been intended by Congress that suits for over $10,000 against the Administrator could be brought in any state court of general jurisdiction, but in the federal jurisdiction only in the Court of Claims; and as we read recent decisions of the Supreme Court the jurisdiction of

a United States District Court to entertain a suit against governmental agencies and corporations is not limited by the provisions of the Tucker Act, 28 U.S.C.A. §§ 41(20), 250 et seq. Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724; Reconstruction Finance Corporation v. J. G. Menihan, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.

Defendant relies upon four grounds as basis for the motion for a directed verdict: (1) that the loan was not in reality for $50,000 but only for $30,000 and that the note was taken and listed with the defendant for the larger amount for the purpose of increasing the insurance coverage; (2) that the bank failed to exercise reasonable judgment in making the loan and particularly failed to require a profit and loss statement from the borrower in accordance with the regulations of the defendant; (3) that the loan was not for an authorized purpose in that $1,500 thereof was used to pay interest on a bond issue and $7,707.25 thereof was applied by the bank itself to installment payments of principal and interest due the bank on the loan; and (4) that the suit was premature in that all the installments of the note were not due at the time suit was brought.

The first two grounds require no extended discussion. When the evidence is viewed in the light most favorable to plaintiff, as it must be on motion for directed verdict by defendant, there can be no question as to its being sufficient to establish that the loan was for $50,000, and not $30,000, and that reasonable judgment was exercised by plaintiff in making it. It is true, as argued, that a regulation of defendant requires the taking by the lender from the borrower of a profit and loss statement; but a reasonable construction of this regulation is that such statement shall be taken in cases where it is available. Here the borrower had virtually been out of business for twelve months before the loan was made and was not in position to furnish such statement, and defendant was advised of the facts. The action of the defendant, in continuing to list the loan as insured after receiving notice that no profit and loss statement had been furnished, amounted to an administrative interpretation of the regulation that, under the circumstances disclosed, no profit and loss statement was necessary.

In so far as the $7,707.25 and the $1,500 items are concerned, we think that they were properly treated as not eligible for insurance. The $7,707.25 item was in reality a reduction of the amount of the loan and the $1,500 item was clearly used to the knowledge of the bank and its agents for an unauthorized purpose. There is no evidence of any fraudulent intent, however, or of any intent to evade the limitations or provisions of the act with respect to these items; and we do not think that, because of them, the insurance with respect to the entire loan may be avoided. We have here another administrative interpretation of the act and of the regulations issued thereunder. When advised of the status of these items, the action of the Administrator, after first eliminating the loan as insured, was to restore it to the list of insured loans and to eliminate only the items themselves, listing the remainder of the loan as insured. Such action we think was reasonable and in accord with what was just and right in the premises. Where a loan is made in good faith for an authorized purpose and in reliance upon the insurance which the government provides to encourage loans of this character, it would be unreasonable to hold that insurance as to the entire loan is forfeited because some items are included by mistake or inadvertence which are not insurable under the regulations. The law does not favor forfeitures; and not only would such a holding result in injustice in many cases, but it would greatly limit the usefulness of the act since the result of so technical a holding would be to frighten away from the loans the institutions upon which the government is relying to make them. The rule to be applied, in the absence of fraud or intent to evade the limitations of the act, is that applicable in the case of loans made to municipal corporations which are valid as to only a part of the amount for which they are made, i. e. the insurance should be held to apply to the portion of the loan which is eligible. Cf. McGillivray v. Joint School District, 112 Wis. 354, 88 N.W. 310, 58 L.R.A. 100, 88 Am.St.Rep. 969.

Little need be said as to the ground that the suit was prematurely brought. As pointed out above, the installment payments which were due at the time of suit exceeded the amount sued for, which is

sufficient ground for ignoring the point, if it were otherwise well taken.

What we have said disposes of the contention that the jury should have been instructed to eliminate the total amount of the $50,000 loan to the Old Tavern Brewing Company from the amount of the insured loans. There is no question but that the Old Tavern loan was eligible for insurance except with respect to $16,375 thereof. This exception relates to a payment made from the loan to the president of the company, which was in turn applied by him on an indebtedness due the bank. It appears, however, that the indebtedness due the president by the company was for moneys which he advanced to carry on the project which was the basis of the loan, and that he thought it proper to reimburse himself from the proceeds. Assuming that he was wrong in this, there is no showing of any fraud or intent to evade the provisions of the act, and the rule above stated should be applied, i. e. the loan should be held eligible for insurance except with respect to this item. This was the rule applied by the Administrator, who, after learning the facts, eliminated the $16,375 from the amount of the loan as insured and listed the remainder.

A serious question is presented as to the admissibility of evidence to the effect that the defendant approved plaintiff's claim in the amount sued for, subject to the approval of the Comptroller General. This evidence was admitted by the trial judge for the purpose of showing the history of the transactions between the plaintiff and the defendant and the jury were directed not to consider it as establishing liability. We think that the evidence was not admissible, except possibly for the purpose of showing administrative interpretation of the regulations with reference to insurability of loans partly ineligible; but we do not think that the defendant is in position to urge error with respect to its admission. The fact to which it was directed was included by counsel in a stipulation of facts and appeared also in the opinion of the Comptroller General attached as an exhibit to the answer of the defendant. In no event, we think, could the defendant have been prejudiced by this testimony in the light of the instructions given the jury as to the limited purpose for which it was to be considered by them.

The exceptions to the charge relate principally to refusal to give prayers for instruction to the effect that the loans to the glass company and the brewing company were ineligible for insurance in toto because they contained ineligible items. These prayers did not correctly state the law applicable to the case, since, as pointed out above, there was no evidence of fraud or intent to evade the restrictive provisions of the act and the loans were insurable except with respect to items eliminated by the Housing Administrator, which were not in suit. Exception is taken also to the charge of the court to the effect that the regulations were to be construed strictly against the defendant. This was a correct statement of the rule of law (Garrison v. United States, 7 Wall. 688, 690, 19 L.Ed. 277); and, while the interpretation of the regulations was, of course, a matter of law for the court, we see no ground for complaint that the jury were advised of the rule applicable, particularly as they were required to say whether the regulations, which were read to them, had been complied with. In no aspect of the matter do we see how the defendant was prejudiced by the instruction, as the real questions which the jury were to decide were carefully stated and explained in the charge.

Before claim was filed by plaintiff against defendant it had collected $4,250 on the guaranty of the Simplex Engineering Company. Defendant contends here that plaintiff's claim should be reduced by this amount. This matter was not set up in the answer, was not seriously pressed in the court below and is merely mentioned in the brief filed with us. It is clear that the position is without merit, since the suit is for less than the amount of the debt after the collection is credited upon it. The plaintiff unquestionably had the right to apply the collection upon the debt; and there is nothing in the regulations which provides that the amount of the insurance shall be decreased in such case. If the debt be treated as partly insured and partly not insured, the plaintiff had the right to apply the collection upon the uninsured portion; and this would be the application made by the law in the absence of application by the plaintiff, upon the principle that the law will apply a payment to that portion of a debt for which the security is most precarious. Maryland Cas. Co. v. City of South Norfolk, 4 Cir., 54 F.2d 1032, 1038.

And we think that the court below was correct in allowing interest upon the claim, interest being allowable as an incidental item of damages for failure to pay the claim promptly when due. Curtis v. Innerarity, 6 How. 146, 154, 12 L.Ed. 380; Spalding v. Mason, 161 U.S. 375, 396, 16 S.Ct. 592, 40 L.Ed. 738; Railroad Credit Corp. v. Hawkins, 4 Cir., 80 F.2d 818, 825, 826. This is the rule prescribed by statute in West Virginia. Code Ch. 56, Art. 6, Sec. 27; Williams v. Baltimore & O. R. Co., 9 W. Va. 33, 39; American Liability & Surety Co. v. Bluefield Supply Co., 4 Cir., 70 F.2d 187. And it is the West Virginia rule which we must follow. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

Defendant contends that the United States has not agreed to pay interest in such a case. The answer is that the United States agreed to be sued as an insurer; and the recovery of interest for delay in payment is an ordinary incident of a suit on an insurance contract. 33 C.J. 147. No distinction can properly be drawn between the recovery of interest and the recovery of costs as an incident of such a suit; and the recovery of costs has been expressly held to be proper. Reconstruction Finance Corporation v. J. G. Menihan Corporation, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.

There was no error and the judgment appealed from will be affirmed.

Affirmed.