Mack C. KNUCKLES and Pamela
K. Knuckles, Plaintiffs

v.

RBMG, INC., a corporation, Global
Mortgage Group, Inc., a corporation,
Mortgage Portfolio Services, Inc., a
corporation, William Whitehair, and
Federal National Mortgage Associa-
tion, Defendants.

Civil Action No.: 2:03–2414.

United States District Court,
S.D. West Virginia,
at Charleston.

March 27, 2007.

Bren J. Pomponio, Daniel F. Hedges, Heather E.W. Walsh, Mountain State Justice, Inc., Charleston, WV, for Plaintiff.

Mark G. Schroeder, Briggs & Morgan, St. Paul, MN, O. Gay Elmore, Jr., Elmore & Elmore, William W. Booker, Kay Casto & Chaney, Nicholas P. Mooney, II, R. Terrance Rodgers, Allen, Guthrie, McHugh & Thomas, Charleston, WV, Donald B. Verrilli, Jr., Ian Gershengorn, J. Alex Ward, Scott B. Wilkens, Jenner & Block, Gary C. Tepper, Kristine J. Dunne, Arent Fox Kintner Plotkin & Kahn, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

COPENHAVEN, District Judge.

Pending before the court is plaintiffs' motion, filed January 8, 2004, seeking to remand the above-captioned civil action to the Circuit Court of Kanawha County, West Virginia.

### I.

According to the allegations of their complaint, the plaintiffs were solicited by a real estate agent, Joe Lannen, in June or July 2000 concerning the potential purchase by them of residential real estate located in Mercer County, West Virginia. Compl. at ¶ 8. The real estate was represented to have a value of $75,000 and the plaintiffs were directed by Lannen to defendant Global Mortgage Group, Inc. ("Global Mortgage"), for financing. *Id.* at ¶¶ 8–9.

Defendant William Whitehair, a licensed real estate appraiser, was sent by Global Mortgage to conduct an appraisal of the real estate. *Id.* at ¶ 10(a). His appraisal valued it at $75,000. *Id.* at ¶ 10(b). The plaintiffs apparently decided to purchase the real estate and Global Mortgage arranged two loans through defendant Mortgage Portfolio Services, Inc., evidenced by notes dated August 8, 2000, in the amounts of $60,000 and $11,250 respectively and secured by deeds of trust on the real estate.[1] *Id.* at ¶¶ 11–12. The transaction

---

1. Fannie Mae has filed a motion for summary judgment which sheds additional light on the overall transaction. The documents attached to that motion, all of which are relied upon in the complaint, include the real estate sale contract, the notes, deeds of trust and assign-ments. These documents reveal that the purchase price of the real estate was $75,000. Fannie Mae's Mot. S.J. at Ex. C. The larger loan is memorialized in a thirty-year fixed rate note bearing an annual interest rate of 9.5%. *Id.* at Ex. E. The smaller loan is memo-

was consummated and the larger loan was subsequently purchased by the defendant Federal National Mortgage Association ("Fannie Mae"). *See* fn. 1.

A subsequent appraisal conducted by an "honest appraiser," presumably hired by the plaintiffs or their counsel, in February 2002 valued the real estate at $44,500. Compl. at ¶ 13(a); Pls.' Mot. to Rem. at 2. Plaintiffs defaulted on the larger loan and foreclosure proceedings were initiated through a notice of sale by substitute trustee Richard A. Pill, at which sale, held on August 28, 2003, the real estate was purchased by RBMG, Inc., for the sum of $76,425.74. Pls.' Mot. Remand at Ex. B.

On September 26, 2003, Fannie Mae initiated an eviction action against the plaintiffs in the magistrate court of Mercer County, West Virginia. *Id.* at Ex. A. Rather than seek to remove the magistrate court matter to the Circuit Court of Mercer County and file a counterclaim as was their right under W. Va.Code § 50–4–8, plaintiffs commenced this action, on November 3, 2003, against all of the defendants listed in the style of this case, and the State of West Virginia ex *rel.* West Virginia Real Estate Licensing and Certification Board ("Appraisal Board"), in the Circuit Court of Kanawha County, West Virginia.[2] Plaintiffs also filed a Notice of Lis Pendens with the County Clerk of Mercer County. *Id.* at Ex. C.

With respect to Fannie Mae, plaintiffs allege that it was the "underwriter" and "true lender" in the transaction. Compl. at ¶ 4(b). Plaintiffs accuse the defendants

of violations of the West Virginia Consumer Credit and Protection Act, W. Va.Code § 46A–1–101, *et seq.*, breaches of fiduciary duty, conspiracy and fraud. Plaintiffs, in addition to compensatory damages, punitive damages and statutory penalties, seek injunctive relief purporting to modify or cancel the obligation as well as enjoining the defendants from continuing certain lending practices in the State of West Virginia.

On November 17, 2003, Fannie Mae was served with a copy of the complaint and summons. Not. of Removal at ¶ 3. On December 4, 2003, Fannie Mae removed on the grounds that its federal charter, found at 12 U.S.C. § 1723a(a), confers original jurisdiction upon this court to hear the action. Fannie Mae also contends that it is entitled to remove this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *Id.* at ¶ 4. In addition to the notice of removal, written consents to the removal executed by the remaining defendants who had been served, including the Appraisal Board, were filed. *Id.* at ¶ 14.

On January 8, 2004, the plaintiffs filed a motion to remand. Plaintiffs contend, among other things, that Fannie Mae's charter does not confer federal jurisdiction and that Fannie Mae is not acting as a federal instrumentality so as to confer jurisdiction under the federal officer removal statute. In Fannie Mae's response it further elaborates on its position that both its charter and the federal officer removal

---

rialized in a fifteen-year note bearing an annual interest rate of 15.49%. *Id.* The larger note was assigned by Mortgage Portfolio Services, Inc., to RBMG, Inc., on August 17, 2000. *Id.* at Ex. G. The note was later assigned by RBMG, Inc. to non-party DLJ Mortgage Capital, Inc., who in turn assigned it on October 1, 2000, to Fannie Mae. *Id.* at Ex. A. Plaintiffs defaulted on the terms of the larger note.

**2.** On October 12, 2004, the parties informed the court that they had agreed that plaintiffs' claims against the Appraisal Board could be severed and remanded to the Circuit Court of Kanawha County. Consistent with this agreement, an order was entered on October 18, 2004, which severed and remanded those claims and terminated the Appraisal Board as a party in this action.

statute permit the court to exercise jurisdiction over this action.

## II.

 Removal statutes must be construed in light of the federalism concerns that animate the policy of strictly confining federal jurisdiction within the congressionally-set limits. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). "The policy of the statute calls for its strict construction." *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934). A case must be remanded if federal jurisdiction is doubtful. *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994); *see also Able v. Upjohn Co.,* 829 F.2d 1330, 1332 (4th Cir.1987), *cert. denied,* 485 U.S. 963, 108 S.Ct. 1229, 99 L.Ed.2d 429 (1988) (stating that "congressional desire to restrict removal has been understood to require that doubts about the propriety of removal be resolved in favor of retained state court jurisdiction").

## III.

### 1. *Fannie Mae's Charter*

Fannie Mae contends that federal jurisdiction is proper pursuant to its charter and *American National Red Cross v. S.G.,* 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992).

In *Red Cross,* the United States Supreme Court addressed the issue of whether the charter of the American National Red Cross conferred both the capacity to sue in federal courts and also jurisdiction upon the federal courts. The relevant portion of the Red Cross charter, which was amended in 1947, provides that "The American National Red Cross ... shall have ... the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." *Id.* at 251, 112 S.Ct. 2465 (citations omitted).

Examining its previous decisions concerning the jurisdictional scope of a federal charter, the Court stated that:

> These cases support the rule that a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts.

*Id.* at 255, 112 S.Ct. 2465 (citations omitted). The Court ultimately held that the language contained in the Red Cross charter conferred original federal jurisdiction inasmuch as it "expressly authoriz[ed] the organization to sue and be sued in federal courts." *Id.* at 257, 112 S.Ct. 2465. In so holding, the Court gave weight to the fact that five years prior to the amendment of the Red Cross charter in 1947, the Court found language that was substantively identical to that in the amended Red Cross charter sufficient to confer federal jurisdiction, suggesting that Congress relied upon this holding when drafting the amendment of the Red Cross charter. *Id.* (referring to *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)).

Fannie Mae insists that because its charter, like the Red Cross charter, mentions the federal courts this alone "is sufficient to demonstrate Congress' intent to confer original jurisdiction." This is a misreading of *Red Cross.* As the Supreme Court made clear, a charter which mentions the federal courts "may" be read to confer federal court jurisdiction. Accordingly, *Red Cross* does not compel the conclusion that Fannie Mae's charter confers federal court jurisdiction; rather, it simply acknowledges that Fannie Mae's charter could possibly be read to confer federal jurisdiction insofar as the charter mentions federal courts. The court is thus required to interpret the other language in Fannie Mae's charter to determine whether it can be read to confer federal jurisdiction.

■ The court first observes that the "sue and be sued" provision found in Fannie Mae's charter is not identical to the "sue and be sued" provision found in the Red Cross charter. The differences between the two are not merely semantic, but have jurisdictional effect. More specifically, the Red Cross charter provides that the Red Cross could "sue and be sued *in courts of law and equity, State or Federal, within the jurisdiction of the United States;*" however, Fannie Mae's charter permits it "to sue or be sued, and to complain or defend, *in any court of competent jurisdiction, State or Federal.*" (citations omitted) (emphasis supplied). Under the canons of statutory construction each word in a statute should be given effect and linguistic superfluity avoided. *Scheidler v. Nat'l Org. for Women, Inc.,* 547 U.S. 9, 126 S.Ct. 1264, 164 L.Ed.2d 10 (2006). Accordingly, the phrase "any court of competent jurisdiction, State or Federal," found in Fannie Mae's charter, but not in the charter of the Red Cross, must be given effect. For the phrase "any court of competent jurisdiction" to have any meaning it should be read as differentiating between state and federal courts that possess "competent" jurisdiction, i.e., an independent basis for jurisdiction, from those that do not. To conclude, as Fannie Mae suggests, that its charter could be read to confer original federal jurisdiction in all suits in which it is a party, notwithstanding the absence of an independent basis for federal jurisdiction, would effectively eliminate the phrase "of competent jurisdiction" from the charter. Stated differently, were the court to adopt Fannie Mae's reading of its charter, all federal courts would possess jurisdiction, regardless of competency.

Indeed, the district court that has most thoroughly addressed the question of whether Fannie Mae's charter confers federal jurisdiction, absent an independent ground for federal jurisdiction, has similarly answered the question in the negative. *Federal Nat. Morg. Ass'n v. Sealed,* 457 F.Supp.2d 41 (D.D.C.2006). At least two other district courts have reached the same conclusion. *Poindexter v. Nat'l Mortgage Co.,* Civ. No. 94–5814, 1995 WL 242287, at *10 (N.D.Ill.1995) (observing that Fannie Mae's charter, as compared with the charter of the Red Cross, "is distinguished by the phrase 'in any court of competent jurisdiction, State or Federal,' implying that one must look elsewhere to determine competence."); *Molton, Allen & Williams, Inc. v. Harris,* 436 F.Supp. 853, 855 (D.D.C.1977) (" 'sue and be sued' clauses, such as 12 U.S.C. §§ 1702 & 1723a, are not jurisdictional grants") (citations omitted).

While there is no circuit court authority addressing the jurisdictional effect of Fannie Mae's charter, the court observes that the substantial majority of federal circuit courts that have interpreted the phrase "in any court of competent jurisdiction, State or Federal" found in 12 U.S.C. § 1702 respecting the Secretary of Housing and Urban Development, have rejected the proposition that this language serves as a grant of federal jurisdiction. *C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.,* 903 F.2d 114, 118 (2d. Cir.1990) (observing that lower court correctly concluded that section 1702 "is only a waiver of sovereign immunity and not an independent grant of jurisdiction"); *Industrial Indem., Inc. v. Landrieu,* 615 F.2d 644, 647 (5th Cir.1980) ("As we read 12 U.S.C. § 1702, it is plainly no more than a waiver of sovereign immunity and requires another statute to grant jurisdiction in order to make a court competent to hear a case ..."); *DSI Corp. v. Secretary of Housing and Urban Development,* 594 F.2d 177, 180 (9th Cir.1979) (district court correctly concluded that it was without jurisdiction under Section 1702); *Bor–Son Bldg. Corp. v. Heller,* 572 F.2d 174, 181 (8th Cir.1978) ("Section 1702 is not a grant of original subject matter

jurisdiction to the federal district courts."); *Lindy v. Lynn,* 501 F.2d 1367, 1369 (3rd Cir.1974) (federal jurisdiction improper under 12 U.S.C. § 1702, where federal district court could not establish an independent basis for jurisdiction and was thus incompetent). Also, the United States Court of Appeals for the Seventh Circuit has similarly concluded that "in any court, state or federal, of competent jurisdiction," found in 38 U.S.C. § 1820(a)(1), is "better read" as not conferring federal jurisdiction. *Western Securities Co. v. Derwinski,* 937 F.2d 1276, 1279 (7th Cir.1991).

There is, however, authority to the contrary from the court of appeals for the Fourth Circuit in a 12 U.S.C. § 1702 setting. In *Ferguson v. Union National Bank,* 126 F.2d 753 (4th Cir.1942), our court of appeals, without extended discussion, found the section 1702 phrase "in any court of competent jurisdiction, State or Federal" sufficient to confer federal jurisdiction there. *Id.* at 756. As noted, the circuit courts of appeals that have addressed the issue in the last half-century have reached the opposite conclusion—that is, the section 1702 phrase "in any court of competent jurisdiction, State or Federal," does not confer federal jurisdiction. *See Landrieu,* 615 F.2d at 647 (wherein the Fifth Circuit declined to follow *Ferguson* inasmuch as it "confuses the waiver of sovereign immunity and a grant of subject matter jurisdiction."). It is also noted that *Ferguson* was cited with approval in *George H. Evans & Co. v. U.S.,* 169 F.2d 500, 502 (3rd Cir.1948) for the proposition that section 1702 conferred federal jurisdiction; however, the Third Circuit, upon

revisiting the issue, *sub silentio* overruled this decision. *Lindy,* 501 F.2d at 1369.[3]

The court concludes that the holding in *Ferguson,* arising as it does in the context of 12 U.S.C. § 1702, does not compel a finding that Fannie Mae's charter operates to confer federal jurisdiction.

It is also worthy of mention that the legislative history of the "sue and be sued" provision in Fannie Mae's charter lends additional support to the conclusion that it should not be read to confer federal jurisdiction. As already observed, the Court in *Red Cross* gave weight to the fact that Congress received notice of the charter language necessary to confer federal jurisdiction in the Court's 1942 decision in *D'Oench, Duhme,* and then used substantively identical language in its 1947 amendment of the Red Cross charter. *Id.* at 260, 112 S.Ct. 2465. Here, however, the "sue and be sued" provision in Fannie Mae's charter was introduced by Congress in the Housing Act of 1954, twelve years after the Supreme Court had placed Congress on notice of the charter language sufficient to confer federal jurisdiction. Notwithstanding this notice and despite using language consistent with that notice in the Red Cross charter amendment seven years prior to the 1954 amendment of the Fannie Mae charter, Congress did not use the language endorsed in *D'Oench, Duhme* and instead included the phrase "in any court of competent jurisdiction, State or Federal" in Fannie Mae's charter. The court's reading of Fannie Mae's charter serves to give effect to those words by requiring an independent basis for jurisdiction.[4]

**3.** *See also Ames–Ennis, Inc. v. Midlothian Limited Partnership,* 469 F.Supp. 939, 942 (D.Md.1979) ("While ordinarily this court would consider itself conclusively bound by the holding of the Fourth Circuit [in *Ferguson*], in this case, recent developments in the law as well as a number of well-reasoned opinions in other circuits compel the conclu-

sion that s[ection] 1702 is not an independent basis of jurisdiction.").

**4.** Furthermore, it appears the 1968 amendments to Fannie Mae's charter emphasize the different nature of Fannie Mae. The language of 12 U.S.C. § 1723a(a) must be read in *pari materia* with the language set forth in 12

Fannie Mae attempts to escape both the language and legislative history of its charter asserting that "federal courts have uniformly permitted Fannie Mae to remove state court actions to federal court." This statement is misleading for at least three reasons. First, this contention was made prior to the well-reasoned decision in 2006 in *Fannie Mae v. Sealed*, in which the district court, after careful consideration, found that Fannie Mae's charter did not operate to confer federal jurisdiction. Second, this contention was inaccurate at the time made inasmuch as at least two district courts had concluded that Fannie Mae's charter did not confer federal jurisdiction. *Poindexter*, 1995 WL 242287; *Molton, Allen & Williams*, 436 F.Supp. at 855. Third, Fannie Mae cites four district court cases in support of this assertion, but those cases provide no more than a conclusional statement that Fannie Mae's charter confers federal jurisdiction and a citation to Fannie Mae's charter and/or *Red Cross. Grun v. Countrywide Home Loans, Inc.*, Civ. No. 03–0141, 2004 WL 1509088, at *2 (W.D.Tex.2004); *Connelly v. Fed. Nat'l Mortgage Association*, 251 F.Supp.2d 1071, 1072–73 (D.Conn.2003); *C.C. Port, Ltd. v. Davis–Penn Mortgage Co.*, 891 F.Supp. 371, 371 (S.D.Tex.1994); *Peoples Mortgage Co. v. Fed. Nat'l Mortgage Assn.*, 856 F.Supp. 910, 917 (E.D.Pa.1994).[5]

In view of the foregoing, the court concludes that Fannie Mae's charter does not operate to confer federal jurisdiction and turns to Fannie Mae's contention that federal jurisdiction is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

### 2. *Federal Officer Jurisdiction*

■ The federal officer removal statute is a statutory exception to the well-pleaded complaint rule and permits removal by

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . .

28 U.S.C. § 1442(a)(1). To qualify under section 1442(a)(1), a defendant must: (1) be a "person" within the meaning of the statute; (2) act under the direction of a federal officer; (3) show a nexus or "causal connection" between the alleged conduct and the official authority; and (4) have a colorable federal defense. *Watson v. Philip Morris Companies, Inc.*, 420 F.3d 852,

---

U.S.C. § 1716b and 12 U.S.C. § 1717(a)(2)(A) & (B) which partitioned the prior Federal National Mortgage Association into GNMA and Fannie Mae. Section 1716b provides, in relevant part, that:

> The purposes of this title include the partition of the Federal National Mortgage Association as heretofore existing into two separate and distinct corporations, each of which shall have continuity and corporate succession as a separated portion of the previously existing corporation. One of such corporations, to be known as Federal National Mortgage Association, will be a Government-sponsored private corporation. . . . The other, to be known as Government National Mortgage Association, will remain in the Government[.]

GNMA remained in the Government as a body corporate, without capital stock, housed in the Department of Housing and Urban Development, with its principal office in the District of Columbia where it is deemed a resident. § 1717(a)(2)(A). Fannie Mae became a private corporation, with common stock, deemed a District of Columbia corporation. §§ 1717(a)(2)(B), 1718(a).

**5.** None of these district court cases cite any of the persuasive section 1702 authority from the circuit courts of appeals. These courts generally state, without analysis, something to the effect that jurisdiction is proper under Fannie Mae's charter.

855 (8th Cir.2005); *Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832, 843 (N.D.W.Va.2004). It is the removing defendant's burden to establish federal jurisdiction under the federal officer removal statute. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998). Moreover, "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999).

■ Here, Fannie Mae is unable to satisfy the causal connection requirement. The Supreme Court has recognized that "[t]o satisfy the [acting under color of office] requirement, the officer must show a nexus, a 'causal connection' between the charged conduct and asserted official authority." *Jefferson County Ala. v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999)(internal citation omitted). Such a showing is made by a defendant when it demonstrates that " 'the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.' " *Watson*, 420 F.3d at 861 (quoting *Virden*, 304 F.Supp.2d at 844). Addressing the causal connection requirement, the Supreme Court has observed that the defendant "must by direct averment exclude the possibility that it [the state court action] was based on acts or conduct of his not justified by his federal duty." *Mesa v. California*, 489 U.S. 121, 132, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

Fannie Mae contends that it is entitled to remove under 28 U.S.C. § 1442(a) inasmuch as five of its eighteen member board of directors are selected by the President of the United States and it is subject to regulatory oversight both by the Secretary of the Department of Housing and Urban Development and the Office of Federal Housing Enterprise Oversight ("OF-HEO"). According to Fannie Mae, the regulatory oversight by those persons or entities is so comprehensive as to establish overall direction and control by those persons and entities over the entirety of its functions, including discretionary functions.

Importantly, Fannie Mae does not contend, nor does any evidence of record suggest, that its purchase of plaintiffs' loan or the purchase of the pool of loans in which plaintiffs' loan was placed was specifically directed or mandated as the result of any order or regulation promulgated by the Secretary of Housing and Urban Development, OFHEO or any of the five presidentially appointed board members. Fannie Mae has thus failed to satisfy the causal connection requirement inasmuch as it has not demonstrated that the act which formed the basis for plaintiffs' suit against Fannie Mae was performed pursuant to an officer's direct orders or in accordance with comprehensive and detailed regulations.

## IV.

For the reasons stated herein, it is accordingly ORDERED that plaintiffs' motion to remand be, and it hereby is, granted. With respect to plaintiffs' request for attorney's fees and costs associated with opposing the motion to remand, the court finds that Fannie Mae, while ultimately unsuccessful, presented an objectively reasonable basis for removal and ORDERS that the parties shall bear their own attorney's fees and costs associated with the motion to remand. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005)("[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and to the Clerk of the Circuit Court of Kanawha County, West Virginia.