**STATE OF MICHIGAN, DEPARTMENT OF SOCIAL SERVICES, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary United States Department of Health and Human Services, Defendant.**

**No. G82–454 CA5.**

United States District Court, W.D. Michigan, S.D.

May 25, 1983.

Robert N. Rosenberg, Asst. Atty. Gen., Lansing, Mich., for plaintiff.

Thomas Gezon, Asst. U.S. Atty., Grand Rapids, Mich., for defendant.

OPINION

BENJAMIN F. GIBSON, District Judge.

This case arises out of the State of Michigan's challenge to disallowances by the De-

partment of Health and Human Services (HHS) of federal financial participation (FFP) in payments that the State made to certain nursing homes for Medicaid services provided during the period October 1, 1978, through September 30, 1979.[1] During that period, the nursing homes were in the process of appealing determinations by the State that they no longer met the requirements for participation in the Medicaid program. On August 31, 1982, this Court granted plaintiff a preliminary injunction restraining the implementation of these disallowances. While specifically disclaiming any intention to indicate an opinion on the merits, the Court's Opinion of that date found a substantial threat of irreparable harm and held that plaintiff had "raised such substantial and difficult questions going to the merits as to make them a fair ground for litigation." The Court has now received the administrative record and the parties' briefs on cross-motions for summary judgment, oral argument has been heard, and the matter is ripe for disposition.

The State first received in April of 1979 notification of disallowances for the fiscal quarters ending in December of 1978 and March of 1979. The state then informed the affected nursing homes that their provider agreements would be terminated effective July 15, 1979. The homes promptly brought suit in state court and obtained an injunction requiring the state to continue their provider status and payments until they were afforded all their rights of appeal under state law. On April 30, 1980, the Health Care Financing Administration (HCFA) issued a formal notice of disallowance for the entire period at issue here. The state took an appeal of the disallowance to the Departmental Grant Appeals Board (GAB). The GAB considered substantially the same arguments as are raised here and on April 30, 1982 issued a seven-teen-page, single-spaced, written decision (Number 290) which reversed in part but sustained approximately $4.2 of the original $5.5 million disallowance. The state then filed this action in July of 1982 seeking immediate relief.

■ The standard of review of agency decisions such as this requires this Court to determine whether the actions of the defendant were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The agency decision is entitled to a presumption of regularity, but the reviewing court is required to engage in a substantial inquiry. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Under this standard the Court must consider whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. The ultimate standard of review is a narrow one and the Court is not empowered to substitute its judgment for that of the agency. *Id.* at 416, 91 S.Ct. at 823–24.

■ The central issue in this case is the interpretation of Program Regulation Guide November 11 (PRG–11). That provision restates the general rule that FFP may not be claimed for payments made by a state to a facility where the facility's provider agreement has expired or has otherwise been terminated, and then goes on to state this exception to the rule:

If, however, State law provides for continued validity of the provider agreement pending appeal, or if the facility is upheld on appeal and State law provides for retroactive reinstatement of the agreement, the agreement would not be considered terminated during the appeal period for

---

1. To qualify for FFP under Title XIX of the Social Security Act, a state must have a plan requiring periodic inspections (surveys), a determination that a facility (provider) meets applicable requirements (certification), and an agreement with the provider (provider agreement) that it will keep the necessary records and furnish them to the state upon request. 42 U.S.C. 1396a(a)(19), (26), (27), (31), (33), and (36). Implementing regulations require surveys at least every 12 months, make the period of certification coterminous with that of the provider agreement, and generally limit that term to 12 months or less. 42 CFR 431.107, 442.12, 442.15 (1978–1979); 42 CFR Part 449 (1977); and 45 CFR Part 249 (1970–1976).

purposes of Federal financial participation for payments to the facility.[2]

The state argues that PRG–11's reference to "appeal" as construed in *Maxwell v. Wyman,* 478 F.2d 1326 (2d Cir.1973) means judicial review as well as administrative appeal and that FFP is therefore available pursuant to PRG–11 as long as a provider has an appeal of its decertification pending.[3] In Decision No. 290 the GAB rejected this argument and held that FFP during pending provider appeals is limited to a maximum of 12 months after expiration of certification.

The state challenges this application of PRG–11 on several grounds. The state contends that limiting FFP to a fixed period, shorter than that required for a final decision on appeal, is contrary to federal law and to the Michigan medicaid state plan; is arbitrary, unreasonable, and capricious; and is a violation of the constitutional doctrine of separation of powers. The state further contends that defendant should be estopped from disallowing FFP under the facts and circumstances of this case.

The state argues that the GAB's decision is arbitrary, unreasonable, and capricious in that a twelve-month limitation on the phrase "pending appeal" in PRG–11 is an arbitrary limit. The Court is of the opinion that, on the contrary, the interpretation is eminently reasonable in the context of the entire Medicaid program structure. As the GAB observed, the statute and regulations provide that FFP is available only to certified facilities; certification is time limited to 12 months or less; and certification is based on a determination that a facility meets Medicaid standards. The GAB went on to explain:

> Michigan would have us overlook the statutory/regulatory requirement for periodic (i.e., at least annual) inspection (survey) and certification. Congress made this an express precondition for federal payment and a facility which has

met the certification requirement is still required to meet it again in the succeeding 12 months. It follows that the State should not be entitled to FFP for payments to a decertified facility for more than 12 months without a new survey and determination on certification, solely because the facility's appeal has not been resolved. To do as Michigan asked would entitle the State to FFP an indefinite period for a decertified facility even though a facility which had met the standards and had been certified would have to be recertified within 12 months.

Decision No. 290, p. 10. The Court finds that defendant's interpretation is clearly a reasoned decision "based on the relevant factors."

The state argues that defendant lacks the authority to disallow the FFP at issue here absent a duly promulgated regulation. The state emphasizes that the agency indicated an intention to address issues concerning the "effect State laws and court injunctions against States which continued State payments to facilities or extended their provider agreements throughout the hearing should have on Federal Medicaid payments." 44 Fed.Reg. 9749 (Feb. 15, 1979). Although at that time the HCFA Administrator intended to address those issues in a new Notice of Proposed Rulemaking, the state points out that it has not even yet done so. The state contends that the policy giving rise to the disallowance taken by defendant should have been implemented pursuant to § 4 of the Administrative Procedure Act.

The Court is of the opinion that this case involves an instance of quasi-adjudication, not rulemaking. The GAB issued its Decision No. 290 after considering briefs and the agency record, and after holding a hearing at which witnesses testified and exhibits were introduced. The Decision addressed a particular controversy involving

---

**2.** In 1973 the Secretary of HHS issued an interpretation of PRG–11 as authorizing continued FFP "if State law *or judicial action* requires that a provider agreement remain in force during the course of an appeal."

**3.** Defendant has not directly challenged the state's claim that PRG–11 has the force and effect of a regulation.

one state over a specific period of time in the past. *See generally* 2 K. Davis, Administrative Law Treatise §§ 7:2–7:3 (2d ed. 1979). Accordingly, there was no need to proceed by way of § 4 of the A.P.A. Even if this were an instance of rulemaking, it would likely fall within the exception of 5 U.S.C. § 553(b)(A) and (d)(2) dealing with interpretive rules. *See Chamber of Commerce of United States v. O.S.H.A.,* 636 F.2d 464 (D.C.Cir.1980).

The state contends that the disallowance at issue violates the Title XIX state plan, and that because HCFA approved the plan it is obligated under "the law of contracts" to reimburse the state for payments made to nursing homes in an appeal status. The GAB addressed this argument as follows:

> We find that the State has failed to show any connection—much less the one it claims—between the State plan amendment and provider appeals.

> As counsel for HCFA brought out in cross examining Mr. Allen, neither the subject nor the content of the amendment dealt with provider appeals. Tr., pp. 83–88. The State's witness testified that by reference to use of the same appeals procedure the amendment necessarily incorporated the entire provider appeals process, prompting counsel for HCFA to question whether that logic was not "a little circular."

> .   .   .   .   . .

> These circumstances, in addition to the wording of the amendment itself, constitute "substantial evidence that the State's interpretation is unsupportable."

Decision No. 290 at 5. The court agrees. The state's entitlement to FFP is more appropriately characterized as statutory rather than contractual in nature; as such, the GAB's reasonable interpretation of the Medicaid statute and regulations appropriately defines the scope of that entitlement.

The state argues that the disallowance effectively overrules *Maxwell* and therefore violates the constitutional doctrine of separation of powers. The GAB distinguished *Maxwell* in this manner:

> The Court's actions and words in the second *Maxwell* decision must be read in light of its effort to ensure that the State would not suffer financial loss for carrying out the Court's order in the first *Maxwell* decision. The Court was impressed that the State had "demonstrated good faith compliance" with the court's order and "acted with due despatch" on the provider appeals. 478 F.2d at 1328. Michigan has not demonstrated in this appeal that it always moved with similar urgency to adjudicate provider appeals. Noting the *Maxwell* court's repeated concern with expeditious handling of provider appeals, we do not agree that the *Maxwell* court would have directed HEW to pay FFP under the circumstances here. In *Maxwell,* the court was dealing with what it found was an arbitrary line HEW had attempted to draw between administrative and judicial review. Here, no such distinction has been suggested and the 12 month limitation Michigan complained of merely treats decertified facilities on appeal the same as certified facilities. To do otherwise would be arbitrary indeed.

> Even assuming that the Second Circuit might hold that *Maxwell* is precedent for a court in that Circuit to order HEW to pay FFP during the pendency of a provider appeal no matter how long administrative and judicial review might take, it does not follow that we are authorized, much less bound, to apply that precedent in Michigan.

Decision No. 290 at 11–12. The GAB had earlier noted that "the circumstances here" involved "facilities which had not been certified for varying periods ranging from four to seven years." The GAB went on to offer an additional distinction:

> We note also that in August 1973, subsequent to the second *Maxwell* decision, HEW promulgated a regulation codified as 45 CFR 205.10(b)(3). That regulation limited FFP for payments made in accordance with a court order to such payments as are "within the scope of Federally aided assistance programs." In *Ohio* and subsequent decisions, the Board held

that language to mean that for decertified facilities on appeal, as for certified facilities, FFP was available for a maximum additional 12 months. We think it is likely that if the *Maxwell* court had been confronted with a timely application of 45 CFR 205.10(b)(3), it might have decided that case differently.

*Id.* The Court is persuaded that the GAB gave careful consideration to the *Maxwell* opinions and drew appropriate distinctions from those cases. The state attempts to read those decisions for more than they are worth, and the Court finds that the state's argument in this respect lacks merit.

Finally, the state contends that defendant should be estopped from implementing the disallowance. Once again, the GAB carefully considered this argument before rejecting it with a well-reasoned explanation. The GAB concluded:

> We conclude that the Agency is not estopped from taking this disallowance. We are not persuaded that there was affirmative misconduct by any federal official(s) which induced the State to continue to pay these facilities. Rather, we find that the State chose to continue these facilities in an active provider status in its implementation of State law and administrative procedures despite confusion concerning the availability of FFP. The State was certainly aware that the availability of FFP to facilities pending appeal was far from clear, given the proposed rules on this issue in January of 1977 and the letters cited by the Agency that the State received in 1977 and 1978 which state the Agency's position. We find that the State was not lured into making these payments in reliance on the certainty of FFP.

Decision No. 290 at 7. This Court agrees that it was far from clear to the state at the time it made payments to the affected nursing homes that FFP would be available. The state's claim of reliance is belied at least in part by the fact that the state was under court order to continue the payments. Moreover, the "absence of clear policy guidance concerning PRG–11" did

not rise to the level of misconduct sufficient to support an estoppel against the government. *See Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *Community Health Services v. Califano,* 698 F.2d 615 (3rd Cir.1983); *State of New Jersey v. Department of Health and Human Services,* 670 F.2d 1284 (3rd Cir.1982).

For the reasons stated, the Court concludes that the disallowance at issue was fully in accord with applicable law, and was not arbitrary, capricious, or an abuse of discretion. Accordingly, the injunction of August 31, 1982 is dissolved, and defendant's motion for summary judgment is granted.