SOUTHERN SOG, INC.,
Petitioner-Appellant,

v.

James S. ROLAND, Area Director of the Department of Housing and Urban Development et al., Defendants-Appellees.

No. 79–4013.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 4, 1981.

Edward L. Cates, Jackson, Miss., for petitioner-appellant.

Robert E. Hauberg, U. S. Atty., L. K. Travis, Jackson, Miss., Philip P. Houle, U. S. Dept. of HUD, Atlanta, Ga., for Roland, Moize & HUD.

James W. Newman, III, W. O. Dillard, Jackson, Miss., for Ferguson.

Before WISDOM, COLEMAN and RANDALL, Circuit Judges.

COLEMAN, Circuit Judge.

In May, 1974 the United States Department of Housing and Urban Development (hereafter "HUD"), acting under the authority of Section 221(d)(3) of the National Housing Act as amended, 12 U.S.C. § 1715*l*, agreed to insure loans for a low income housing project in Flora, Mississippi. The project was to be called The Pride Gardens Apartments. The project was sponsored by two non-profit organizations, Delta Real Estate Development, Inc. ("DRED"), and Mississippi Action for Community Education, Inc. ("MACE"). MACE and DRED formed a limited partnership (called "Pride Gardens, Ltd."). DRED, Inc. was the General Contractor for the project.

In November, 1974 the initial preconstruction began. Almost immediately the project began having problems with the foundation construction. Compression tests performed by Central Testing and Control, Inc. of Jackson, Mississippi, showed that the concrete poured in some of the foundations did not meet construction specifications.

Prior to February 28, 1975, L. V. Sumter was the foundation subcontractor. His services were terminated and on February 28, 1975, DRED, Inc., entered into a contract with Plaintiff-Appellant, Southern Sog, Inc., for that organization to lay foundations in the Flora Project. Southern Sog was to be paid $34,555 upon completion.

On March 25, 1975, Southern Sog contracted with J. J. Ferguson Sand and Gravel Ready Mix—Hot Mix ("Ferguson") to furnish the concrete for the foundations. In its suit, Southern Sog contends that Ferguson had furnished concrete to its predecessor, L. V. Sumter, and that it would not have contracted with Ferguson had it not been strongly urged to do so by the General Contractor, DRED, Inc.

The concrete Southern Sog ordered from Ferguson was delivered by May 23, 1975. As it was laid into the foundations in the Flora project more problems arose. Unusual cracks appeared in the concrete. Central Testing and Control, Inc., sent the project architect, Charles Craig, weekly reports detailing the foundations which failed compression tests.

The litigants do not agree upon the exact date HUD or Southern Sog were each notified of the foundation problems. HUD says the architect notified it August 1, 1975, that he could not certify the project because of the foundation problems. It says that at this point, and certainly no later than the end of August, 1975, Southern Sog was told about the inadequacies of its foundation work. Southern Sog argues that since the architect was working not only for MACE and DRED but also for HUD, the government was surely notified about the foundation problems months before August 1, 1975, through the repeated reports Craig received on compression tests of the concrete. It also says it was not notified that DRED and HUD were dissatisfied with the foundation work until November, 1975, when 80 per cent of the construction was already finished, and when remedying the foundation faults would have been more expensive than would have been the case had Southern Sog been notified earlier.

Regardless of when Appellant received notification, HUD was concerned about the foundation problems and by the architect's refusal to certify the buildings, and in August, 1975 was actively seeking a solution for its dilemma. HUD says that at this point it had three options: (1) to cancel the project, (2) to force the subcontractor to redo the faulty work, or (3) to seek "creative means" of remedying future damages which the defective foundations might cause the project. To cancel the project could cost HUD as much as $1 million in loan guarantees, and would prevent the creation of much needed low income housing. To require Southern Sog or Ferguson to tear out and replace the foundation concrete (assuming it was possible) would cost at least $75,000, much more than either was to get for its contract. HUD chose the third solution, a "living" escrow of $10,000 to be held during the 40 years of the mort-

gage term. The escrow funds were to be disbursed only if the contractor went bankrupt or if the project foundations crumbled. HUD *retained major control of the escrow account*, particularly including the right to determine the occurrence of conditions which would trigger disbursement of the funds.

Neither Southern Sog nor Ferguson were included in the discussions concerning the escrow agreement. Of course, they did not sign the escrow agreement. HUD says in requiring the escrow account it did not specify that the money should come from funds due Southern Sog. The record shows that HUD was given some notice that the $10,000 would come from a source other than the non-profit organizations with which it had been dealing. In a letter to James Roland, area director of HUD, dated August 25, 1975, Charles Bannerman, President of MACE explained the probable source of the escrow funds: ". . . the owner[1] must look to the sub-contractor[2] and the sub-contractor must look to the supplier.[3]"

In anticipation of the escrow agreement DRED, Inc., had withheld $10,000[4] it owed Southern Sog. Contending that Ferguson's concrete was defective, Southern Sog withheld what it owed for the concrete.

The escrow agreement was executed May 5, 1977, *after almost two years of discussions*.

Of all the unpaid parties Ferguson acted first to get its money. On February 25, 1977, it sued Southern Sog on an open account, claiming $10,566.16 plus expenses. The suit was filed in the Circuit Court of the First Judicial District of Hinds County, Mississippi.

Southern Sog vigorously defended the Ferguson suit, filing an answer, affirmative defenses and a counterclaim. On January 6, 1978, it notified all participants to the

---

1. Pride Gardens, Ltd.

2. Southern Sog, Inc.

3. J. J. Ferguson Sand and Gravel Ready Mix—Hot Mix.

4. This is an approximate figure. Other computations based upon the record could lead one to conclude DRED, Inc., withheld from Southern Sog either $9,599 or $11,766.

escrow agreement that unless they released the $10,000 and indemnified Southern Sog against the suit by Ferguson they would be subject to a lawsuit.

On April 26, 1979, Southern Sog filed suit in federal district court against HUD, Ferguson, DRED, MACE, and Pride Gardens, Ltd. It also named as defendants James S. Roland, Area Director of HUD and Jerry D. Moize, Area Counsel of HUD. In the suit it sought to recover the $10,000 in the HUD escrow account. It sought $10,566.16 actual damages from Roland, Moize, DRED or MACE, and $1 million punitive damages from Roland and Moize. Finally it asked for an injunction staying prosecution of Ferguson's actions in state court, and an award of $100,995.29 against Ferguson for malicious prosecution. Southern Sog laid jurisdiction for these claims in 12 U.S.C. § 1701 *et seq.* 28 U.S.C. § 1331, and 28 U.S.C. § 2201–2202.

Southern Sog did not get very far in federal district court. The court dismissed Ferguson as a party to the suit, holding that Mississippi substantive law does not allow an action for malicious prosecution except where the prosecution ends in favor of the defendant. *See Grenada Bank v. Petty,* 174 Miss. 415, 164 So. 316, 318 (1935). Southern Sog has withdrawn its appeal on this point, and we, therefore, do not consider it.

All other defendants filed motions to dismiss for lack of jurisdiction or alternatively for summary judgment under Rule 56[5] of the Federal Rules of Civil Procedure. The court agreed that it had no jurisdiction in the action against HUD and dismissed all defendants without prejudice. In its Opinion dated November 13, 1979, The District Court stated "This suit was initially instituted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, from which it was removed here. The re-maining action is against these private litigants and this suit should consequently be remanded to that state court for further proceedings."

Three days later, realizing that it had erred in stating that the suit was initially filed in state court, The District Court amended the Opinion, eliminating the quoted paragraph and substituting a statement that the federal court had no jurisdiction against Moize, Roland, HUD or the United States. It further stated, ". . . the motion of said federal defendants to dismiss this suit should be sustained with suit being dismissed *with prejudice* as to these defendants. As to the remaining private litigants not heretofore dismissed by this court this action should be dismissed without prejudice." [emphasis added]

On appeal, Southern Sog pursues two points: (1) that the court erred in dismissing its action against HUD for lack of jurisdiction and (2) that the court erred, after finding no jurisdiction, when it dismissed the actions against the same nonjurisdictional defendants *with prejudice.*

■ The district court clearly erred in dismissing, for lack of jurisdiction, Southern Sog's claim to the $10,000 escrow fund controlled by HUD. We held in *Industrial Indemnity, Inc. v. Landrieu,* 615 F.2d 644, 647 (5th Cir. 1980) that a federal district court has jurisdiction of a claim by a private litigant to a fund retained by the Secretary of HUD, the origin of which was not the public treasury. In *Industrial Indemnity,* the court made two general statements of law applicable here: (1) the "sue and be sued" language of 12 U.S.C. § 1702 (1976)[6] is a qualified waiver of the sovereign immunity covering the Secretary where the source of the damages sought by the claimant would not be the United States Treasury, and (2) the grant of jurisdiction comes from 28 U.S.C. § 1331(a)

---

5. Rule 56 provides that a moving party is entitled to summary judgment if ". . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

6. 12 U.S.C. § 1702 (1976) provides in pertinent part that "The Secretary shall in carrying out the provisions of this subchapter . . . be authorized in his official capacity to sue and be sued in any court of competent jurisdiction, state or federal."

(1976).[7] The litigant's claim is partly based upon federal common law and partly based on Section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(4) (1976). *See also Lomas & Nettleton Company v. Pierce*, 636 F.2d 971 (5th Cir. 1981). Clearly under the rule of *Industrial Indemnity* and *Lomas & Nettleton* the federal district court did have jurisdiction to entertain Southern Sog's claim to the escrowed funds.

Southern Sog's claims against James S. Roland, Area Director of HUD and Jerry Moize, Area Counsel of HUD for $10,566.16 in actual damages and $1 million in punitive damages are another matter. In its pleadings, Southern Sog emphasized that the objectional actions by Roland and Moize were performed within the scope of their employment by HUD. Southern Sog says in creating the escrow fund instead of requiring that the foundation faults be corrected, they went against advice from the Washington offices of HUD; and that their actions were "willful, arbitrary and capricious." Southern Sog does not contend, however, that the escrow fund was a violation either of the HUD authorizing legislation or of HUD's administrative guidelines.

■ Since both Roland and Moize were each sued in his official capacity for acts within the scope of his official employment, the claims against them are actually claims against the sovereign. *Unimex, Inc. v. United States*, 594 F.2d 1060, 1061 (5th Cir. 1979). As such, and in the absence of two exceptions, these claims are barred by sovereign immunity: (1) that the actions by Moize and Roland in setting up the escrow account were beyond the authority granted them by statute, or (2) that the actions they undertook thereasto, although authorized by statute, were unconstitutional. *See Lar-*

*son v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–1462, 93 L.Ed. 1628 (1948); *Petterway v. Veteran's Administration*, 495 F.2d 1223, 1225 (5th Cir. 1974). Since Southern Sog did not assert either exception the dismissal, when entered, was correct.[8]

■ As mentioned *ante*, the District Court did not explain why correcting the factual error in its first Opinion required it to change the manner of its dismissal of the case against the federal defendants from "without prejudice" to· "with prejudice." All defendants had asked for summary judgments and the effect of this dismissal with prejudice was the same as a dismissal under Rule 56 of the Federal Rules. The dismissals are to be reviewed under the standards governing summary judgments.

We have previously stated that appellant's claims against James Roland and Jerry Moize, *as pleaded*, were barred by sovereign immunity. It necessarily follows as a matter of law that no genuine issue, in the record, existed as to these defendants at that time.

■ The record indicates that the escrow fund was created at the insistence of HUD. It shows that HUD maintains control over disbursement of these funds, that ·HUD had notice that the funds would probably come from the money owed to Appellant, and that the funds can be distributed for reasons other than deterioration of the foundations which the Appellant built. Consequently, summary disposition of that aspect of the case was inappropriate.[9]

In reversing summary judgment we intimate no opinion on the merits of either Appellant's claims or Appellees' defenses, but we do hold that there is jurisdiction

---

7. 28 U.S.C. § 1331(a) (1976) grants to federal courts jurisdiction over federal questions where a civil action "... arises under the Constitution, laws or treaties of the United States ..."

8. We make no determination as to any actions by Roland or Moize outside the scope of their authority or employment. Such actions, if any, are not covered by the dismissal with prejudice of Southern Sog's claims against Roland and Moize.

9. It appears that Southern Sog, Inc., filed this suit against the *Department* of Housing and Urban Development rather than against the *Secretary* of Housing and Urban Development. In order, on remand, to come under the limited waiver of sovereign immunity granted by 12 U.S.C. 1702 (1976), appellant must amend his action to name the secretary.

from which Southern Sog must be afforded its day in court on the merits.

The dismissal of Appellant's claims against Defendants Roland and Moize, as pleaded, for acts within the scope of their employment and authority is affirmed.

The dismissal of Appellant's claims against HUD for the escrow fund are reversed and remanded for further action not inconsistent herewith.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.