706 F.2d 471
 31 Cont.Cas.Fed. (CCH) 71,111
 PORTSMOUTH REDEVELOPMENT AND HOUSING AUTHORITY, Appellee,
v.
Samuel R. PIERCE, Jr., Secretary of the United States Dept.
of Housing and Urban Development; Philip Abrams, Assistant
Secretary for Housing, United States Dept. of Housing and
Urban Development; I. Margaret White, Area Manager, United
States Dept. of Housing and Urban Development, Appellants.
 No. 82-2138.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1983.
Decided April 27, 1983.
 
 Freddi Lipstein, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C. (Gershon M. Ratner, Associate Gen. Counsel for Litigation, Howard M. Schmeltzer, Sp. Asst., Suzanne Grealy Curt, U.S. Dept. of Housing & Urban Development, J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Elsie Munsell, U.S. Atty., Alexandria, Va., on brief), for appellants.
 Ralph W. Buxton and Gordon B. Taylor, Jr., Portsmouth, Va. (Cooper, Davis, Kilgore, Parker, Leon & Fennell, P.C., Portsmouth, Va., on brief), for appellee.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The Secretary of the Department of Housing and Urban Development (HUD) appeals from the district court's grant of summary judgment awarding Portsmouth Redevelopment and Housing Authority certain declaratory and injunctive relief. Because the district court lacked subject matter jurisdiction, we vacate its order and remand the case with instructions to transfer it to the United States Claims Court.
 
 
 2
 * The Authority is a municipal corporation which operates a number of low income housing facilities in Portsmouth, Virginia. It receives several types of federal subsidies pursuant to an annual contributions contract (ACC) with HUD and the provisions of 42 U.S.C. Secs. 1437-1437n. Supplemental contributions for operating expenses (operating subsidies) are made available to the Authority on an annual basis in accordance with the terms of its ACC and 42 U.S.C. Sec. 1437g. At the time the Authority and HUD entered into the ACC, section 1437g provided in part: "The Secretary shall embody the provisions for such annual contributions in a contract guaranteeing their payment subject to the availability of funds." In 1979 Congress amended section 1437g by adding the following clause to the sentence we have quoted: "and such contract shall provide that no disposition of the lower income housing project, with respect to which the contract is entered into, shall occur during and for ten years after the period when contributions were made pursuant to such contract unless approved by the Secretary." Pub.L. No. 96-153, Sec. 211(a)(3), 93 Stat. 1110, 42 U.S.C. Sec. 1437g(a)(1) (1979). Pursuant to his general rule making powers under 42 U.S.C. Sec. 3535(d), the Secretary of HUD promulgated a regulation that requires each public housing agency operating under an existing annual contributions contract to execute an amendment to its contract embodying the new language of section 1437g(a)(1). See 24 C.F.R. Sec. 869.105(a) (1980).
 
 
 3
 The Authority refused to execute an amendment to its ACC, and HUD began withholding operating subsidies. In addition, HUD declined to consider the Authority's application for funds under the Comprehensive Improvement Assistance Program (CIAP), 42 U.S.C. Sec. 1437l. The parties have stipulated that the CIAP application would have been approved were it not for the Authority's refusal to execute the amendment.
 
 
 4
 The Authority filed a complaint in federal district court seeking to enjoin HUD from withholding operating subsidies due under its ACC. The original complaint requested that HUD be required to release $676,085, the amount of funds allegedly wrongfully withheld during fiscal years 1981-82 and 1982-83, and that it be enjoined from requiring the Authority to execute an amendment as a prerequisite to receiving operating subsidies or having its CIAP application considered. An amended complaint filed by the Authority excluded the request for specific monetary relief and instead asked the court to "direct an accounting of those sums owed ... as a result of the [Secretary's] erroneous interpretation of [section 1437g(a)(1) ] and the resulting wrongful withholding of operating subsidies and CIAP funds."
 
 
 5
 The Secretary filed a motion to dismiss for lack of jurisdiction, alleging that the action was essentially a contract claim against the federal government for an amount exceeding $10,000 and jurisdiction thus belonged exclusively to the Claims Court under the Tucker Act, 28 U.S.C. Secs. 1346(a)(2) and 1491. The district court denied HUD's motion, ruling that HUD had waived its sovereign immunity in 42 U.S.C. Sec. 1404a and that the district court had federal question jurisdiction under 28 U.S.C. Sec. 1331. The court decided the merits of the case in the Authority's favor and issued the requested declaratory and injunctive relief.
 
 
 6
 We agree with the Secretary that subject matter jurisdiction over this action belongs exclusively in the Claims Court. Because we dispose of this appeal on jurisdictional grounds, we do not address the merits of the Authority's claim except to the extent they bear on the question of jurisdiction.
 
 II
 
 7
 The Tucker Act establishes three conditions which, if satisfied, vest subject matter jurisdiction exclusively in the Claims Court. The action must be against the United States, seek monetary relief in excess of $10,000, and be founded upon the Constitution, federal statute, executive regulation, or government contract. See 28 U.S.C. Secs. 1346(a)(2) and 1491.
 
 
 8
 It is not necessary that the United States be denominated as a party. An action against a federal agency or official will be treated as an action against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act." Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted).
 
 
 9
 This is a suit against a federal official for acts performed within his official capacity, and, consequently, it amounts to an action against the sovereign. See Southern Sog, Inc. v. Roland, 644 F.2d 376, 380 (5th Cir.1981); Ippolito-Lutz, Inc. v. Harris, 473 F.Supp. 255, 259 (S.D.N.Y.1979). Furthermore, any monetary judgment recovered in this case would expend itself on the public treasury. There is no "separate fund" for the payment of operating subsidies within HUD's exclusive control, "the origin of which [is] not the public treasury." Southern Sog, 644 F.2d at 379; see also Lomas & Nettleton Co. v. Pierce, 636 F.2d 971, 973-74 (5th Cir.1981). The funds appropriated to HUD for payment of operating subsidies clearly originate in the public treasury, and they do not cease to be public funds after they are appropriated.* Therefore, both because this is a suit against a federal official and any judgment recovered would expend itself on the public treasury, we construe this action as one against the United States for purposes of the Tucker Act.
 
 
 10
 The second requirement for Tucker Act jurisdiction is that the claim seek monetary relief in excess of $10,000. The Authority's primary objective in this action is to recover money allegedly wrongfully withheld by the federal government. The amount involved far exceeds the jurisdictional prerequisite. Although the Authority's amended complaint phrases its request for money as a request for equitable relief, Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms. Hoopa Valley Tribe v. United States, 596 F.2d 435, 436 (Ct.Cl.1979).
 
 
 11
 The Authority also contends that in light of the other equitable claims at stake, the Claims Court would be unable to render a complete and effective remedy because it lacks the power to grant injunctive or declaratory relief. This argument lacks merit for two reasons. First, where a claim primarily seeks monetary relief, it is improper to deny the Claims Court jurisdiction simply because it cannot grant the precise equitable relief sought. American Science & Engineering, Inc. v. Califano, 571 F.2d 58, 62 (1st Cir.1978). A district court does not gain jurisdiction over a Tucker Act claim simply because the complaint couples requests for monetary relief with requests for injunctive relief. Cook v. Arentzen, 582 F.2d 870, 878 (4th Cir.1978).
 
 
 12
 Furthermore, the Claims Court can issue declaratory relief that is "tied to and subordinate to a monetary award." S.J. Groves & Sons Co. v. United States, 495 F.Supp. 201, 209 (D.Colo.1980); see also Gentry v. United States, 546 F.2d 343, 346 (Ct.Cl.1976). A 1972 amendment to 28 U.S.C. Sec. 1491 endows the Claims Court with limited equitable jurisdiction incidental to its jurisdiction over monetary claims because it provides: "In any case within its jurisdiction, the [Claims Court] shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." See also S.J. Groves & Sons Co., 495 F.Supp. at 209. Therefore, the Claims Court is capable of awarding the Authority the relief it seeks.
 
 
 13
 The third and final requirement for Tucker Act jurisdiction is that the claim be founded upon the Constitution, federal statute, executive regulation, or government contract. The Authority contends that this action arises out of federal law and that the district court has jurisdiction under 28 U.S.C. Sec. 1331.
 
 
 14
 The gravamen of the Authority's claim is that HUD cannot modify its contractual obligation to pay operating subsidies by unilaterally altering the terms of the ACC. The answer to this issue depends on whether Congress intended to authorize the Secretary to modify existing annual contributions contracts by incorporating the new provisions of Sec. 1437g(a)(1), and, if this was its intention, whether the modification infringes any constitutionally protected interests of the Authority. The primary basis for the Authority's challenge to the Secretary's actions, therefore, is the government contract. Although disposition of this claim necessitates adjudication of some questions of federal law, "efforts to ground [jurisdiction] on the federal question statute have consistently been rejected by courts because the effect would be to undercut the exclusive jurisdiction of the Court of Claims." American Science & Engineering, Inc., 571 F.2d at 63.
 
 
 15
 Furthermore, the Tucker Act gives the Claims Court jurisdiction over actions against the United States founded upon the Constitution, federal statutes, and regulations, as well as upon government contracts. Consequently, the Claims Court is the proper forum for this action, whether it is characterized as one in contract or one to interpret provisions of the Constitution, federal statutes, or regulations pertaining to the contract. Lee v. Blumenthal, 588 F.2d 1281, 1282 (9th Cir.1979); see also Estate of Watson v. Blumenthal, 586 F.2d 925, 929 (2nd Cir.1978).
 
 
 16
 Finally, the Authority contends that the district court has jurisdiction under 42 U.S.C. Sec. 1404a. That section provides that the "United States Housing Authority may sue and be sued only with respect to its functions under this chapter, and sections 1501 and 1505 of this title." The Authority argues that section 1404a both waives sovereign immunity and supports federal question jurisdiction by the district court.
 
 
 17
 In support of its position, the Authority relies on Ferguson v. Union National Bank, 126 F.2d 753, 756-57 (4th Cir.1942), where this court interpreted 12 U.S.C. Sec. 1702, another "sue and be sued" clause. Section 1702 provides that the "Secretary shall, in carrying out the provisions of this [chapter], be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." In Ferguson, we reasoned that Congress could not have intended for suits over $10,000 to be brought in "any state court of general jurisdiction, but in the federal jurisdiction only in the Court of Claims." Ferguson, 126 F.2d at 756. Consequently, we held that section 1702 not only waived sovereign immunity but also conferred subject matter jurisdiction in the federal district court. Although the Authority does not contend that section 1702 governs this action, it argues that sections 1404a and 1702 are similar and that Ferguson, by analogy, is applicable.
 
 
 18
 The two "sue and be sued" clauses are substantially different, however, and it is precisely this difference that renders Ferguson inapposite. Section 1404a does not contain the critical language "in any court of competent jurisdiction, State or Federal," and thus the basis for our reasoning in Ferguson does not exist here. See A.L. Rowan & Son v. HUD, 611 F.2d 997, 1000-01 n. 3 (5th Cir.1980). Therefore, although section 1404a waives sovereign immunity, unlike section 1702 it does not vest jurisdiction in the district court. See Jemo Associates v. Greene Metro. Housing Authority, 523 F.Supp. 186, 187 (S.D.Ohio 1981).
 
 
 19
 In sum, because this essentially is a contract claim against the federal government for monetary relief in excess of $10,000, the Claims Court has exclusive jurisdiction under 28 U.S.C. Secs. 1346(a)(2) and 1491. Accordingly, the district court was without jurisdiction to hear this case. We vacate the district court's judgment and remand with instructions to transfer the case to the Claims Court pursuant to 28 U.S.C. Sec. 1406(c).
 
 
 
 *
 See, e.g., Appropriations Act, Pub.L. No. 97-101, 95 Stat. 1417, 1418, and 1436 (1981)