Phillip L. GIBSON, Plaintiff,

v.

John R. BLOCK, Secretary of the United States Department of Agriculture, Defendant.

Civ. No. F 83-363.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 23, 1985.

Wade R. Bosley, Bosley & Schatz, Marion, Ind., for plaintiff.

Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's ("Secretary") motion to dismiss. Plaintiff ("Gibson") has filed both a response and a supplemental brief. For the following reasons, the motion to dismiss will be granted.

This action arises out of Gibson's participation in the federal government's "Payment In Kind," or PIK, program. Under this program, qualified farmers can receive payment in the form of grain stored by the government in return for not growing crops. Gibson applied to the program, was awarded a contract to receive a certain amount of grain, only to have that amount reduced upon administrative review of a former tenant's appeal of the award. Gibson now sues the Secretary, claiming that the decision not to award him 100% of PIK grain and PIK cash payments was arbitrary and capricious. He seeks a court order that a transcript of the administrative proceedings be provided, a *de novo* hearing on the facts surrounding the award for his farm, and certain findings that he is entitled to 100% of the PIK grain and cash payments.

The Secretary has moved to dismiss the action, arguing that the administrative findings of the PIK program's administrative machinery are not subject to review and that this court has no jurisdiction over this cause because it falls within the exclusive jurisdiction of the Court of Claims. The jurisdictional argument amounts to a motion to dismiss for lack of subject matter jurisdiction, for which the court can consider matters outside the pleadings. *See Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir.1983). The court focuses its attention on the jurisdictional issue.

Based upon the complaint and certain documents filed with the briefs on this motion, the relevant facts are as follows. Gibson owned a farm in Grant County, Indiana known to the Department of Agriculture as farm F–603. The farm had a 160–acre corn base. During 1980–1982, Gibson had rented the farm to Kim Manwell. In 1983, Manwell and Gibson were unable to work out an agreement for renting out the farm for the 1983 crop year. According to Gibson, Manwell told him in January, 1983 that he would not be able to rent the farm and was going to file for bankruptcy, which Manwell did on March 14, 1983. Realizing that Manwell would not rent the farm, Gibson signed up for the PIK program in February, 1983.

On March 17, 1983, Manwell signed a form entitled "Intent to Participate and Application for Payment," in which he claimed a "0" percent share of the pay-

ment, and in which Gibson requested a "100" percent share of the PIK payment. On March 18, 1983, the Grant County Committee of the Department of Agriculture's Agricultural Stabilization and Conservation Service (ASCS) approved a contract whereby Gibson would be entitled to receive a PIK payment for all 160 acres, which under the PIK payment formula, would amount to 14,630 bushels of corn.

In June, 1983, Manwell appealed to the Grant County ASCS Committee concerning the award of 100% of the PIK payments to Gibson. The County Committee ruled in Gibson's favor, and Manwell appealed to the Indiana State ASCS Committee, which ruled that Manwell had been unfairly displaced as a tenant on Gibson's farm and therefore removed farm F–603 from any participation in the PIK program for 1983. Gibson appealed this ruling to the Deputy Administrator for State and County Operations (DASCO), a division of the Department of Agriculture, and the hearing was conducted by telephone conference. DASCO upheld the decision against Gibson, but awarded Gibson partial relief. The relief took the form of a payment in bushels of corn equal in value to the 1982 cash rental per acre times the number of acres set aside in 1983 for PIK, plus an amount for costs incurred in using the acres under approved conservation use. This totaled 11,235 bushels of corn, or 3,395 bushels less than Gibson would have received in 1983 had the adverse ruling not occurred. DASCO also ruled that Gibson would not be considered the operator of the farm for 1983.

Gibson filed this suit to challenge the Secretary's determination that he was only entitled to 11,235 bushels and that he was not the operator of the farm in 1983. Gibson argues that the Secretary's decision was arbitrary and capricious because Manwell's appeal came much too late under the applicable regulations. In his complaint, Gibson originally requested the following relief: (1) that the Secretary be ordered to provide Gibson with a transcript of all the oral testimony at the various administrative hearings; (2) that he be granted a *de novo* hearing on the facts; and (3) that the

court find that Gibson is entitled to the full 100% of the 1983 PIK payments and that he was the 1983 operator of the farm. In his supplemental brief, Gibson acknowledged the receipt of 11,235 bushels of corn, and thus stated that his request for relief amounts to the following:

1. That the court find that:

 a. The plaintiff is entitled to the remaining 3,395 PIK bushels;

 b. The plaintiff is entitled to the $3,048.00 PIK cash payment;

 c. The plaintiff is a 1983 operator;

 d. A declaratory judgment be issued stating that the plaintiff does not owe the liquidated damages of $8,368.36 as set forth in Exhibit E of the Transcript;

 e. The Secretary's decision of October 5, 1983, be reversed.

2. In the alternative, that he be granted a deNovo [sic] hearing to present all the facts to this Court, at which time a transcript of the testimony can be taken.

Plaintiff's Supplemental Brief, p. 5. The Secretary's motion to dismiss is premised on the belief that this request for relief is a request for monetary damages in excess of $10,000.00, which would place the case within the exclusive jurisdiction of the Court of Claims.

 The starting point for the court's jurisdictional analysis is the principle of sovereign immunity. It is well accepted that the United States cannot be sued without its consent. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Regardless of whether the United States is named as a defendant or not, a suit is considered to be against the sovereign if "the judgment would expend itself on the public treasury or domain, or interfere with the public administration." *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947). *See Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). At least part of the relief sought here would operate against the United States, as Gibson seeks payment of cash and a declaration that he does not owe certain damages.

That would have a direct effect on the treasury. In addition, Gibson seeks to obtain grain from the PIK program, which would have a direct effect on the public domain. Clearly, this is a suit against the United States, although it only names the Secretary.

The United States has waived its sovereign immunity in certain limited respects. The Secretary argues that the waiver set forth in the Tucker Act governing claims for monetary damages of more than $10,000.00 is applicable here. Under the Tucker Act, subject matter jurisdiction is vested exclusively in the Court of Claims if the suit is against the United States, seeks monetary relief in excess of $10,000.00, and is founded upon the Constitution, federal statute, executive regulation, or a government contract. 28 U.S.C. §§ 1346(a)(2) and 1491. *See Portsmouth Redevelopment & Housing Authority v. Pierce,* 706 F.2d 471, 473 (4th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Here, the suit is against the United States, and is founded both upon an executive regulation (to the extent that the time period for Manwell's appeal is governed by PIK program regulations) and upon a government contract (as Gibson is claiming his entitlement to the remainder of the PIK payments by virtue of the March 18, 1983 contract agreement with the Grant County ASCS Committee). The real issue here is whether Gibson seeks "monetary relief" in excess of $10,000.00.

■ It is clear that the mere form of the complaint will not control the determination of the type of relief sought; the exclusive jurisdiction of the Court of Claims cannot be avoided by simply framing the complaint to appear to seek only injunctive, mandatory, or declaratory relief. *State of New Mexico v. Regan,* 745 F.2d 1318, 1322 (10th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983); *Portsmouth Redevelopment & Housing Authority,* 706 F.2d at 474; *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 823 (10th Cir.1981). Several different formulae exist to test the essence of the plaintiff's

claim. The Seventh Circuit has held that a claim which seeks "essentially the same relief as would be afforded on a contract claim" cannot avoid the exclusive jurisdiction of the Court of Claims merely because it is framed as a request for equitable relief. *Chicago Consortium, Inc. v. Brennan,* 599 F.2d 138, 141 (7th Cir.1979). Other tests are: if the "real effort of the complaining party is to obtain money from the federal government," the Court of Claims has exclusive jurisdiction, *Bakersfield City School Dist. of Kern County v. Boyer,* 610 F.2d 621, 628 (9th Cir.1979); if the "prime objective" or "essential purpose" is to obtain money from the federal government, Court of Claims jurisdiction is exclusive. *State of New Mexico,* 745 F.2d at 1322; *Alamo Navajo School Bd., Inc. v. Andrus,* 664 F.2d 229, 233 (10th Cir.1981), *cert. denied,* 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487 (1982). To avoid the exclusive jurisdiction of the Claims Court, the equitable relief sought must have "significant prospective effect or considerable value apart from merely determining monetary liability of the government." *State of Minnesota by Noot v. Heckler,* 718 F.2d 852, 858 (8th Cir.1983).

■ A plaintiff need not be seeking cash to fall within this exclusive jurisdiction, provided the essence of the claim is measurable in monetary terms. Thus, in another PIK case brought in the District of Colorado, the farmer-plaintiff filed suit to challenge a decision by ASCS to reduce the amount of wheat he was to receive through the program. The plaintiff sought to obtain the grain lost through the ASCS decision. The court there had little difficulty finding that the suit was one for monetary damages, subject to the Claims Court's exclusive jurisdiction. *Raines v. Block,* 599 F.Supp. 196, 198 (D.Colo.1984). In effect, the *Raines* court viewed the grain as money, so that a suit to obtain the grain was a suit to obtain monetary damages.

This conclusion is supported by the realities present in the PIK program. Farmers do not grow their large crops (in Gibson's case, 160 acres of corn) for personal con-

sumption; rather, they grow them for sale and conversion into cash, thereby justifying the name "cash crop." A PIK payment of grain serves the same purpose—it gives grain to the farmer as an incentive not to grow a crop, and can be converted into cash through sale to a grain dealer. Just as a farmer views his crop as convertible into cash, so should the PIK payment be viewed in monetary terms, as it will do little more than provide the recipient with cash once it is sold. This court therefore reads *Raines* as sanctioning a conversion of PIK grain payments into monetary terms for purposes of determining the district court's jurisdiction under the Tucker Act. Thus, Gibson's request for delivery of the 3,395 bushels of corn under the March 18, 1983 contract, which the Secretary states were valued at $3.38 a bushel at the time this dispute arose, as well as the request for a $3,048.00 PIK cash payment, places this case as a request for monetary relief in excess of $10,000.00.

■ The only real question is whether Gibson's other requests for relief can be considered monetary or as falling within the Claims Court's jurisdiction. The request that the Secretary's decision be reversed and a *de novo* trial be held are at best "procedural" issues to be resolved in an adjudication on the merits of this cause. A reversal of the Secretary's decision would be necessary for an award of the monetary relief sought here; in fact, an award of the crops and cash would in effect be a reversal of the decision. That is clearly within the Court of Claims' jurisdiction, and would flow directly from the adjudication of the monetary claim. Likewise, the trial *de novo* could be an important part of the adjudication of the claim. Claims for relief which are merely incidential or subordinate to the basic suit for money do not remove the action from the Claims Court's exclusive jurisdiction. *See State of New Mexico v. Regan*, 745 F.2d at 1322.

Three requests for relief in the complaint need further comment. Gibson first asks that the Secretary be required to furnish transcripts of the testimony at the various administrative hearings. In *Bakersfield City School Dist. of Kern County*, the plaintiff sought the disbursement of certain funds held by the government, as well as an injunction against the use of the transcript of administrative proceedings because of the alleged inaccuracies in the transcript. The presence of this issue concerning the transcript did not alter the court's conclusion that the Tucker Act applied to the claim. 610 F.2d at 628. The state of the record below, which is one of the issues raised by Gibson's argument concerning the arbitrary and capricious nature of the Secretary's decision, is to a large extent similar to the "procedural" issues discussed above. The examination of the merits of this case in the Claims Court, in the context of determining whether the decision was arbitrary so as to justify an award of the crops and cash sought, would necessarily bring this issue before the court. Gibson loses nothing by seeking this relief in the Claims Court.

■ The second request concerns a finding that Gibson was the operator of farm F–603 in 1983, while the third request seeks a finding that Gibson does not owe certain liquidated damages. Both of these requests are in the nature of a declaratory judgment request—in fact, Gibson calls the request concerning the liquidated damages as seeking a declaratory judgment. The Court of Claims can issue declaratory relief that is "tied to and subordinate to a monetary award." *Portsmouth Redevelopment & Housing Authority*, 706 F.2d at 473, quoting *S.J. Groves & Sons Co. v. United States*, 495 F.Supp. 201, 209 (D.Colo.1980). In addition, a 1972 amendment to 28 U.S.C. § 1491 gave the Claims Court the limited equitable power to remand appropriate matters to any administrative or executive body or official with discretion "as it may deem proper and just." Thus, it would be possible for the Claims Court to declare that Gibson is not liable for the liquidated damages, and to remand the matter to the Secretary with instructions to change the records to show that Gibson was the 1983 operator of the farm. In short, both of these requests are within the power of the

Claims Court to grant, so that the entire case lies within that court's jurisdiction.

The court finds that this action is one primarily for monetary damages against the United States in excess of $10,000.00, and is therefore within the exclusive jurisdiction of the Court of Claims. The cause must be dismissed here, as this court is without subject matter jurisdiction over the claim. The Secretary's motion to dismiss will therefore be granted.

The court also finds that it would be in the interest of justice to transfer this cause to the Court of Claims pursuant to 28 U.S.C. § 1631. A transfer will therefore be ordered.

For the reasons stated above, the defendant's motion to dismiss for lack of subject matter jurisdiction is hereby GRANTED. This cause is hereby TRANSFERRED to the Court of Claims.