COMMONWEALTH OF VIRGINIA, ex rel. The VIRGINIA DEPARTMENT OF MEDICAL ASSISTANCE SERVICES, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, et al., Defendants.

Horace G. FRALIN, et al., Plaintiffs,

v.

Joseph L. FISHER, et al. and Otis R. Bowen, Secretary of Health and Human Services, et al., Defendants.

Civ. A. Nos. 85–0933–R and 84–1171–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Feb. 3, 1988.

William G. Broaddus, Roger L. Chaffe, Richmond, Va., for Virginia Dept. of Medical Assistance Services.

E. Montgomery Tucker, Jennie Montgomery, Asst. U.S. Attys., Roanoke, Va., for Otis R. Bowen, M.D. et al.

William B. Poff, Woods, Rogers & Hazlegrove, Julia Krebs–Markrich, Roger L. Chaffe, Roanoke, Va., for Horace G. Fralin, et al.

Beverly Dennis, III, Regional Atty., James F. Feight, Asst. Regional Atty., Office of Gen. Counsel—Region III, Dept. of HEW, Philadelphia, Pa., for Joseph L. Fisher, et al.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff, the Commonwealth of Virginia (hereinafter the "Commonwealth"), appealed on behalf of Commonwealth's agency, the Virginia Department of Medical Assistance Services (hereinafter "DMAS"), a decision by the Grant Appeals Board (hereinafter the "Board") of the Department of Health and Human Services (hereinafter "HHS"). The Board's decision upheld a disallowance by the Health Care Finance Administration (hereinafter "HCFA") under 42 U.S.C. § 1396b(g)(5) (1982) of $292,-732.48 in federal financial participation to the Commonwealth. The disallowance was based on the Board's interpretation of § 2363(c) of the Deficit Reduction Act of 1984, Pub.L. 98–369 (hereinafter "DEFRA"). Otis R. Bowen, M.D., Secretary of HHS, the Administrator of the Health Care Financing Administration, and the members of the Board (hereinafter collectively referred to as the "Secretary") are the named defendants.

In a similar case, Horace G. Fralin and other partners in several partnerships known as Medical Facilities of America, sued the administrators of the Virginia's Medical Assistance Program (hereinafter "VMAP"). VMAP, the Commonwealth's Medicaid program, has been administered by the DMAS since March 1, 1985.[1] *See* Va.Code Ann. § 32.1–323 (1985). This suit also involves an interpretation of § 2363(c) of the DEFRA amendments. Both actions were consolidated for consideration of this issue.

The secretary has moved to dismiss both actions for want of subject matter jurisdiction. The court has conducted a hearing on the motion, and the motion is now ripe for consideration. For the reasons stated below, the court finds it has jurisdiction over disallowance disputes such as are at issue in the instant cases.

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396q (1985) establishes a joint state and federal program in which participating states share with the federal government the cost of medical services to certain persons needing care. Although states are not required to participate in the cooperative, the Commonwealth operates an approved Medicaid program pursuant to Va.Code Ann. §§ 32.1–323 (1985). The federal arm of the Medicaid cooperative is administered by the Secretary, through the HCFA.

To receive federal Medicaid reimbursements, the Commonwealth must abide by certain requirements. Specifically, the disputed requirement in this case is 42 U.S.C. § 1396b(g)(1) (1982). During the time in question (October to December 31, 1983), § 1396b(g)(1) required the Commonwealth to demonstrate to the Secretary that an "effective program of control over utilization of such services" was in operation. Such a showing included evidence that:

> (A) in each case for which payment is made under the State plan, a physician certifies at the time of admission, ... [or] recertifies, ... at least every 60 days ... that such services are or were required to be given on an inpatient basis because the individual needs or needed such services; and (B) in each such case, such services were furnished under a plan established and periodically reviewed and evaluated by a physician; (C) such State has in effect a continuous program of review of utilization ... (D) such State has an effective program of medical review of the care of patients in mental hospitals, skilled nursing facilities, and intermediate care facilities pursuant to section 1396(a)(26) and (31) of this title whereby the professional management of each case is reviewed and evaluated at least annually by independent professional review teams.

Section 1396b(g)(1)(A–D)(1982).

The Secretary then reviews the Commonwealth's program to determine if it is satisfactory. If the Commonwealth fails to make a satisfactory showing, the Secretary may reduce federal reimbursements ac-

---

1. The Virginia Department of Health which administered VMAP prior to March 1, 1985 brought the original administrative appeal before the Board.

cording to a prescribed formula. *See* § 1396b(g)(5).

In May 1984, HCFA reviewed ten intermediate care facilities in the Commonwealth. The purpose of the review was to verify compliance with the physician certification requirements of § 1396b(g)(1)(A) and (B), focusing on the last quarter of 1983. The HCFA found that sixteen patients, at five facilities, had not been properly certified by physicians. A $292,732.28 disallowance was computed under § 1396b(g)(5) and withheld from the Commonwealth. *See also* 42 C.F.R. § 456.657(b)(1986). Section 1396b(g)(5) imposes penalties for a state's failure to satisfy § 1396b(g)(1).

The DEFRA amendments were signed by the President in July of 1984.[2] The DEFRA amendments eliminated the requirement that physicians certify a patient's need for care in an intermediate care facility every sixty days, and to regularly review and update the plan of medical care, as required by § 1396b(g)(1)(A)–(B) (1982). The DEFRA amendments only require that the state have "an effective program of medical review of the care of patients." § 1396b(g)(1) (1985). The Commonwealth argues that because the physician certification requirement has been deleted from the Medicaid Act, HCFA lacks the authority under § 1396b(g)(5) to penalize the Commonwealth for failure to certify.

The Commonwealth appealed the Secretary's disallowance to the Grant Appeals Board. The Board sustained the disallowance, Decision No. 660, on June 19, 1985. Both the Commonwealth's appeal and the Board's final decision were based on interpretations, albeit differing interpretations, of the DEFRA amendments. Thus, the crux of this controversy concerns to what extent the DEFRA amendments should be accorded retroactive effect. However, prior to any analysis on the merits, the threshold question of jurisdiction must be addressed.

The Commonwealth appealed the DEFRA decision of the Grant Appeals Board to this court, invoking the jurisdiction of the Administrative Procedure Act, 5 U.S.C. § 702 (1982) (hereinafter "APA"). Briefs on the DEFRA amendments were submitted. The Secretary then moved to dismiss on the basis that exclusive jurisdiction lies in the Claims Court. As subject matter jurisdiction cannot be waived, the court will limit its analysis at this time to the question of jurisdiction.

◾ To adjudicate an action against the United States, a court must have subject matter jurisdiction and sovereign immunity must be waived. *See United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Without specific statutory language, the jurisdiction of this court must be based on a general district court jurisdiction statute. Under 28 U.S.C. § 1331 (1982), district courts have subject matter jurisdiction in "all civil cases arising under the Constitution, laws, or treaties of the United States." The APA, 5 U.S.C. § 702 (1982), includes a specific waiver of sovereign immunity for review of final agency action and provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency ... acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States ... Nothing herein ... (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

The APA is not itself an independent source of jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

Other than the district court, the only possible forum for disallowance disputes is the United States Claims Court. Under the Tucker Act, 28 U.S.C. § 1491 (1982), actions filed against the United States for over $10,000.00 money damages must be

---

**2.** Determining the effective date of the DEFRA amendments is central to the merits of the case and need not be decided at this time. *See* § 2363(c) Pub.L. 98–369.

brought in the Claims Court.[3] 28 U.S.C. § 1491(a)(1) provides:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or nonliquidated damages not sounding in tort.

■ In numerous cases dealing with the district court's jurisdiction under 42 U.S.C. § 1316, the outcome hinges on the characterization of the dispute as a noncompliance or a disallowance.[4] A noncompliance decision refers to the entire state Medicaid plan. A disallowance refers to any "item or class of items" within the plan. § 1316(d). The statute provides that if a state is dissatisfied with a noncompliance decision, the "court of appeals for the circuit in which such state is located" has jurisdiction over the controversy. § 1316(a)(3) (1982). If a state is dissatisfied with a disallowance decision, "the State shall be entitled to and upon request shall receive a reconsideration of the disallowance." § 1316(d) (1982). The statute is silent as to the forum in which such reconsideration may be had.

This question has yet to be decided in the Fourth Circuit. *State of North Carolina v. Heckler*, 584 F.Supp. 179, 181 (E.D.N.C. 1984); *see also Georgia Department of Medical Assistance v. United States Department of Health and Human Services*, 708 F.2d 627, 628 (11th Cir.1982). The court will examine the legislative history, the views adopted by other courts and the various theories supporting these views.

One maxim of statutory construction, the expression of one thing is the exclusion of another, supports the strict legislative interpretation that judicial review is precluded in all instances save nonconformity cases. *County of Alameda v. Weinberger*, 520 F.2d 344, 348 (9th Cir.1975). However, "[n]ot every silence is pregnant." *Illinois v. Schweiker*, 707 F.2d 273, 277. When Congress intentionally omitted provision for a precise forum for judicial review of a disallowance, final agency action remained reviewable in district court. *Id.; see* APA, 5 U.S.C. § 703. A jurisdictional question should be phrased in terms of prohibition, rather than authorization. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Thus, it is logical for the court to infer that Congress' omission was intended because the lack of a prescribed forum is cured by the expansiveness of the APA.

The relevant legislative history is not especially helpful. Senator Javits stated:

> Some state and local officials believe that some form of judicial review should encompass all aspects of the public assistance programs, including matching issues or audit exceptions. However, the much greater concern is for review of decisions regarding plan-conformity issues. The Commission believes that to involve audit exceptions or issues other than those of plan conformity in the judicial review process would create many additional problems.

111 Cong.Rec. 3068 (1965). This is the only reference to judicial review and the remarks do not specifically address, nor reveal any preference for disallowance jurisdiction. *Alameda*, 520 F.2d 344, 348. This is understandable given the extreme consequences of nonconformity review, that is,

---

**3.** *See also* 28 U.S.C. § 1346(a)(2) (1982) which provides district courts shall have concurrent jurisdiction with the Claims Court to grant monetary relief on claims under $10,000.00, against the United States.

**4.** *See, e.g., State of Illinois Department of Public Aid v. Schweiker*, 707 F.2d 273, 278 (7th Cir. 1983) (Secretary's treatment of dispute as disallowance or nonconformance adopted by court); *Massachusetts v. Departmental Grant Appeals Board*, 698 F.2d 22, 27–30 (1st Cir.1983) (three

point functional test); *New Jersey v. Department of Health and Human Services*, 670 F.2d 1262, 1277 (3rd Cir.1981); *New Jersey v. Department of Health and Human Services*, 670 F.2d 1284, 1290–92 (3rd Cir.), *cert. denied*, 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); *New Jersey v. Department of Health and Human Services*, 670 F.2d 1300 (3rd Cir.1982) (functional test devised to ascertain whether administrative holding is a noncompliance or a disallowance).

the cut off of federal Medicaid funds. *Illinois v. Schweiker,* 707 F.2d 273, 277. Although judicial review of disallowances appears permissible, which court shall conduct the review is unclear.

On the issue of jurisdiction, two predominant views have emerged. The first, advocated by the Commonwealth, relies on the APA and the presumption that district courts review final agency decisions. The second view, supported by the Secretary, suggests that a disallowance is within the orbit of monetary matters and thus the action belongs in the Claims Court, pursuant to the Tucker Act.

The first view, that district courts have jurisdiction over disallowances, is reached by different courts, on different theories. The Seventh Circuit in *Illinois v. Schweiker,* 707 F.2d 273 found the district court had jurisdiction as a result of practical concern for judicial efficiency.

> This conclusion reduces the pressure for an expansive interpretation of section 1316(a)(3) [appeal of nonconformance dispute is to the court of appeals] and brings to center stage the practical consideration that jurisdictional lines should be clearly marked.

*Schweiker,* 707 F.2d 273, 277–78. In preferring a "clean" jurisdictional line, the court avoided having to distinguish between a disallowance and a nonconformance. *Id.,* p. 278. The danger recognized by the Seventh Circuit is that the Secretary's characterization of the dispute is unchallenged. *Id.* In effect, under this theory, the Secretary may be able to choose his forum.

The Ninth Circuit in *Alameda,* 520 F.2d 344 also found district courts may review disallowances. The court, however, arrived at this conclusion not because of the County's affirmative showing of jurisdiction, but rather because of the failure of the Department of Health, Education, and Welfare to establish clear and convincing evidence that Congress, in enacting § 1316, intended district court review be prohibited. *Id.,* p. 348. The presumption of judicial review of administrative actions was not overcome. This presumption, the court found, was based on significant policy concerns underpinning the APA. "[T]he general rule, subject only to rare exceptions, [is] that the action of a government agency ... is subject to judicial review for arbitrariness and abuse of discretion even though discretion may be broad." *Id.,* p. 348 n. 10 (quoting *Peoples v. United States Department of Agriculture,* 427 F.2d 561, 567 (D.C.Cir. 1970). *See Oregon Department of Human Resources v. Department of Health and Human Services,* 727 F.2d 1411, 1413 (9th Cir.1983) (following *Alameda* ).

District courts have also upheld their jurisdiction over disallowances. In *State of Connecticut Department of Income Maintenance v. Schweiker,* 557 F.Supp. 1077, 1079 (D.Conn.1983), *rev'd on other grounds,* 731 F.2d 1052 (2d Cir.1984), *aff'd,* 471 U.S. 524, 105 S.Ct. 2210, 85 L.Ed.2d 577 (1985), the court relied on the reasoning in *Alameda* and K. Davis, *Administrative Law Treatise* § 23.–03–1 at 373 (Supp.1982) (provision in APA, 5 U.S.C. § 703 for review in 'court of competent' jurisdiction means in absence of contrary statute, review in district court which has general jurisdiction under 28 U.S.C. §§ 1331, 1337). On appeal, the Second Circuit "agree[d] with the Ninth Circuit that there is no indication that Congress meant to bar review of disallowance decisions." 731 F.2d 1052, 1055 (citing *Alameda,* 520 F.2d 344, 347–49).

In *Colorado Department of Social Services v. Department of Health,* 558 F.Supp. 337, 339 (D.Colo.1983) the defendant conceded and the court agreed, without discussion, that the district court had jurisdiction to review disallowances. Similarly, the court in *State of Michigan v. Schweiker,* 563 F.Supp. 797 (W.D.Mich.1983), *aff'd,* 744 F.2d 32 (6th Cir.1984) reviewed a challenged disallowance without discussing its jurisdiction. *See also Delaware Division of Health and Social Services v. HHS,* 665 F.Supp. 1104 (D.Del.1987) (discussion *infra* ); *Georgia v. Califano,* 446 F.Supp. 404 (N.D.Ga.1977).

The second view, that the Claims Court has jurisdiction over disallowances, is based on the Tucker Act, 28 U.S.C. § 1491.

The Secretary has directed the court's attention to *Portsmouth Redevelopment and Housing Authority v. Pierce*, 706 F.2d 471 (4th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In *Portsmouth*, the Housing Authority filed suit to enjoin the Department of Housing from withholding operating subsidies due under the contract. The court found subject matter jurisdiction belonged exclusively to the Claims Court based on the Tucker Act, *see* §§ 1346(a)(2), 1491, even though the request for relief was framed in non-monetary terms. *Portsmouth*, 706 F.2d 471, 473.

*Portsmouth* is distinguishable from the instant case. The Claims Court's jurisdiction in *Portsmouth* was based on the contract claims provisions of the Tucker Act.[5] This case hinges on an interpretation of the DEFRA amendments. In an analagous situation, the D.C. Circuit found that federal grants-in-aid under Title XX of the Social Security Act, 42 U.S.C. §§ 1397–1397f (1985):

> turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties. It seems to us, then, that Maryland's claims are not contract claims for Tucker Act Purposes.

*Maryland Department of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441, 1449 (D.C. Cir.1985).

Since 1972, the Claims Court may also grant "limited equitable relief, collateral to a monetary award in order to resolve an entire controversy." *State of Minnesota by Noot v. Heckler*, 718 F.2d 852, 858 (8th Cir.1983). The Eighth Circuit in *Noot* found that if the primary relief is monetary, the case is within the sole jurisdiction of the Claims Court. *Id.* District court jurisdiction includes only claims for "pro-

spectively-oriented declaratory relief." *Id.,* p. 857. However, "[A] request for declaratory judgement may not be used to give district courts jurisdiction over claims whose 'primary objective' is monetary relief." *Commonwealth of Massachusetts v. Departmental Grant Appeals Board*, 815 F.2d 778, 783 (1st Cir.1987). Under *Noot*, the nature of the primary relief determines which court has jurisdiction.[6]

Often, as in the instant case, a suit for nonmonetary relief may also provide a basis for money damages against the United States. *Noot*, 718 F.2d 852, 858. Thus, the *Noot* court's determination that a district court's jurisdiction is limited results in a "bifurcation of claims between the District Court and the Claims Court, because the District Court is unable to grant monetary relief on claims over $10,000.00." *Id.,* p. 859.

The *Noot* court acknowledged that a district court may be able to retain jurisdiction over the entire claim based on pendent jurisdiction. *Id.* Pendent jurisdiction generally permits a state claim to be heard in federal court if it is closely related to a federal claim. Wright, *Law of Federal Courts*, § 9 (1983). Pendent jurisdiction may also be used by a district court with jurisdiction over nonmonetary claims to hear a monetary claim. This provides a "common sense solution", affording the litigant complete relief in one court. *Woodland Nursing Home Corp. v. Califano*, 487 F.Supp. 9, 11–13 (S.D.N.Y.1979).

The court in *Commonwealth of Massachusetts v. Secretary of Health and Human Services*, 816 F.2d 796 (1st Cir 1987), *cert. granted*, — U.S. —, 108 S.Ct. 693, 98 L.Ed.2d 645 (1988) took the monetary/nonmonetary distinction of the *Noot* case one step further. Not only must the district court determine the nature of the

---

**5.** The Secretary also cites to *Chu v. Schweiker*, 690 F.2d 330, 334 (2d Cir.1982) in which the court transferred a "contractual in nature" claim to the Claims Court. This case is also distingishable for the reasons stated.

**6.** In determining the nature of the relief, courts vary. *See Maryland Department of Human Services v. Department of Health and Human Ser-*

*vices,* 763 F.2d 1441, 1446–48 (D.C.Cir.1985) (Maryland's request for declaratory and injunctive relief "is not a claim for money damages although it is a claim that would require the payment of money by the federal government."); *but see New Mexico v. Regan*, 745 F.2d 1318 (10th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985).

relief, the court must also determine if the dispute "concerns a legal question that has a significant, prospective effect on the ongoing relationship between the federal agency and the affected state." *Id.*, p. 800. If a nonmonetary request will have such an effect, the district court has jurisdiction under the APA. If, however, a significant prospective effect is evinced by a request for monetary relief, the district court must remand the case back to the Secretary for action consistent with the court's interpretation of the statute. *Id.; see Massachusetts v. Grant Appeals Board,* 815 F.2d 778. If the Secretary continues to disallow the reimbursement, the state would then have to bring suit for monetary relief in the Claims Court, under the Tucker Act. The *Massachusetts* court reasoned that the Secretary would be collaterally estopped from raising such a claim. *Massachusetts v. Secretary,* 816 F.2d 796, 800.

The *Massachusetts* court itself is not entirely satisfied with the prospective/retrospective distinction. Such a distinction "'admittedly elevates form over function.'" *Id.* (citing *Kozera v. Spirito,* 723 F.2d 1003, 1008 (1st Cir.1983)). The court agrees and notes that the emphasis on "significant prospective effect" is particularly ill-suited as applied to the instant case. A disallowance is "not only a refusal to pay money, but also a statement of law governing the ongoing relationship" between the state and the HHS. *Massachusetts,* 816 F.2d 796, 799. In the instant case, the legal relationship between the parties "stretches into the future." *Id.*, p. 799. However, the ramifications of the court's interpretation of the statute is confined to the time frame in which certification was required. The DEFRA amendments eliminated this requirement. Thus, while the relief demanded here may affect future cases concerning disallowances based on certification, the significance and the prospective nature of this effect is limited.

■ After considering the various approaches adopted in other circuits, this court agrees that the matter should turn on

the need for a "common sense solution." *Woodland,* 487 F.Supp. 9, 11–13. First, a strong presumption of reviewability of final agency action exists under the APA. Congress intended that the APA provide a judicial safety net for review, in those cases in which review is not otherwise precluded nor left to the agency. *See generally Abbott,* 387 U.S. 136, 87 S.Ct. 1507. Coupled with the absence of any designated court in the statute and the dearth of legislative history, this presumption remains intact. *See Alameda,* 520 F.2d 344.

Second, judicial economy is persuasive. Ideally, one court should resolve the dispute. "A litigant ought to know whether he belongs in the district court of the Court of Appeals." *Illinois v. Schweiker,* 707 F.2d 273, 278. Since the Claims Court's jurisdiction is limited, a district court's complete resolution of the dispute is preferable.

■ In upholding its jurisdiction, this court adopts the position set forth by the United States District Court for the District of Delaware in *Delaware Division of Health and Social Services v. HHS,* 665 F.Supp. 1104 (D.Del.1987). The *Delaware* court, in considering a disallowance similar to the present case, thoroughly reviewed the jurisdiction question. More specifically, it found that district courts have full jurisdiction to hear both monetary and nonmonetary claims in disallowance proceedings for three reasons. The first and foremost reason is judicial economy. The *Noot* court's bifurcated claims process is in itself an oversimplification. Further litigation is often necessary to determine whether district courts may exercise concurrent equitable jurisdiction with the Claims Court. The outcome may vary from circuit to circuit. *Id.*, p. 1117 (*citing Noot,* 718 F.2d 852, 858 n. 11). Even more cumbersome is the instance is which the characterization of the dispute as a disallowance or a nonconformance is unsettled.[7] Then, a litigant would have to file claims in three forums, the Claims Court, the district court and the Court of Appeals. *Delaware,* 665 F.Supp. 1104, 1117; *see* § 1316(a)(3).

---

**7.** *See* n. 4.

The second reason also relates to uncertainty in this disallowance/nonconformance designation issue. The *Delaware* court points out that a party's choice between the Claims Court and district court can be manipulated by characterizing the proceeding as either a "claim against the United States", 28 U.S.C. § 1491, or a review of a "final agency determination." 5 U.S.C. § 704. The statute provides for a "reconsideration of the disallowance." 42 U.S.C. § 1316(d). The court agrees that an appeal of the Board's decision to disallow funds is closer to a request for a reconsideration than pressing a claim against the federal government. *See Delaware*, 665 F.Supp. 1104, 1117.

The third reason set forth by the court is that the "policies of the APA take precedence over the purposes of the Tucker Act." *Id.* The claims court is a court of limited jurisdiction, and thus its jurisdiction must be strictly construed, whereas "the legislative material elucidating [the APA] manifests a congressional intention that it cover a broad spectrum of administrative actions." *Id.*, p. 1118 (citing *Abbott*, 487 U.S. 136, 140, 87 S.Ct. 1507, 1511).

It is the conclusion of this court that district courts are best suited to review disallowance disputes. Congress explicitly provided for reconsideration of disallowances but in an unspecified forum. Failure to prescribe the forum does not negate the perceived need for review of administrative decisions. Administrative dissatisfaction with a key section of a state Medicaid plan may frustrate a state's duty to provide proper medical care to qualified individuals ·as poignantly as an administrative noncompliance finding effects the state plan as a whole.

For these reasons, defendants' motion to dismiss will be denied. An appropriate order will be entered this day. Pending further petition by the parties, the court will take the underlying issues regarding the retroactivity of the DEFRA amendments under advisement.